GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. S. Q. BALL.

No. 6885.

1.  **Notice of Loss or Damage Before Suit.**—Notice upon bill of lading: "Claims for loss or damage must be presented to the delivering line (of railway) within thirty-six hours after the arrival of the freight."   Suit for nondelivery of one barrel of whisky, of a shipment of five barrels of whisky, not delivered by the defendant railway company.  *Held,* that the provision did not apply because the one barrel had never been delivered; besides, upon the delivery of the other four barrels the local

agent assured plaintiff that it "would deliver this barrel in a few days." This was a waiver of notice.

**2. Stipulation that Goods Lost be Valued at Place of Shipment.** — The liability of a common carrier to make compensation for goods or property lost by it extends at common law not only to the duty imposed upon it by law to safely transport the goods, but also to its responsibility to make reparation by way of damages in favor of the owner of the property to the full extent allowed by law in such cases. Any agreement that diminishes or destroys its liability in either of these respects would be contrary to public policy. Contract limiting damages for loss to the value at the place of shipment is void.

**3. Measure of Damages for Goods Lost by Carrier.** — The measure of damages against a carrier for nondelivery of goods shipped is their value at the time and place of delivery with interest, less the proper charges for transportation.

**4. Same.** — Where the recovery is based on the value of the goods at the point of delivery the freight charges should be deducted if not paid, and if paid then the value of the property without reference to the charges is the criterion.

**5. Full Value.** — In the findings by the court was the sum $91.12 as *the full value* of the barrel of whisky not delivered by the defendant. In absence of other proof it will be presumed that the valuation was at the place of destination as required by the law. The court can not presume that the whisky shipped had no market value at San Antonio, the point of destination.

APPEAL from Bexar. Tried below before Hon. G. H. Noonan.
The opinion states the case.

*W. N. Shaw,* for appellant.—1. The contract of carriage limiting the liability of the carrier having been made outside of the State of Texas, being valid and enforceable where made will be enforced in this State, although the contract if made within this State and to be wholly performed within this State would not be valid.

The consignor as agent of owner had authority to stipulate for terms of transportation. Ryan v. Railway, 65 Texas, 13; Redf. on Carr., sec. 52; Hutch. on Carr., sec. 265; Rorer on Railways, art. 6, p. 1332.

The contract being valid in the State where made, the shipment being for interstate carriage, is valid in this State. Ryan v. Railway, 65 Texas, 13; Railway v. Watt, 2 Ct. App. C. C., secs. 781, 782; Railway v. Davis, 2 Ct. App. C. C., secs. 191, 192.

2. The measure of damages for the lost barrel of whisky is its value at San Antonio, the place of delivery, without the freight thereon. 2 Rorer on Railways, 856, 1273; 2 Sedg. on Dam., 94, note 6; Cooper v. Young, 68 Am. Dec., 502; Smith v. Griffin, 38 Am. Dec., 640.

3. Where property is lost in transit by a carrier the measure of damages is the market value of such property at the place of delivery and does not include interest. 1 Ct. App. C. C., sec 1254; 2 Ct. App. C. C., sec. 196, and cases cited.

*Tarleton & Kellar,* for appellee.—1. A common carrier can make no contract the effect of which will be to exempt it in whole or in part

from liability for negligence. A common carrier by special contract may enlarge but can not limit his common law liability. Express Co. v. Dupree, 2 Ct. App. C. C., secs. 318, 320; Moulton v. Railway, 31 Minn., 86; Railway v. Simpson, 30 Kans., 645; Railway v. Abels, 60 Miss., 1017; Marr v. Telegraph Co., 3 S. W. Rep., 496; Rosenfield v. Railway, 1 West. Rep., 151; Taylor v. Railway, 39 Ark., 148; Harvey v. Railway, 74 Mo., 541; Railway v. Barrett, 36 Ohio St., 448; Railway v. Burke, 55 Texas, 332; Laws. on Con. of Carr., secs. 28, 29, 434, 435.

2. If the common law liability of the carrier has been limited in any way by a special contract the burden is on the carrier to prove such contract and that appellee agreed to it. Laws. on Con. of Carr., secs. 101, 246.

3. Evidence of delivery to consignee of less amount of goods than delivered to carrier is *prima facie* sufficient to charge the latter with deficiency. 3 Wood's Railway Law, sec. 449; 3 Suth. on Dam., 236; Ryan v. Railway, 65 Texas, 19; Laws. on Con. of Carr., sec. 138.

4. Where no special market value at the place of consignment is proved, then the cost of the goods and the expense of transportation will be the criterion of the actual value of the goods and the measure of recovery. 3 Wood's Railway Law, sec. 454.

MARR, JUDGE.—The appellee sued appellant in a Justice Court of Bexar County to recover the value of one barrel of whisky and the amount of freight charges paid thereon, with interest, etc. He recovered in that court and appellant appealed to the District Court, where judgment was entered in favor of the plaintiff for $91.12½, the value of the barrel of whisky lost or not delivered by appellant, and for $5.25, the freight charges paid by appellee on said barrel, with interest on the total amount from the 15th day of January, 1887, the date when the freight should have been delivered.

R. Monarch & Co. consigned and shipped from Owensboro, Ky., five barrels of whisky to appellee at San Antonio, Texas, under a through bill of lading, the appellant being "the delivering carrier." One of the barrels was not delivered to the plaintiff by the defendant, but the other four were, on the 13th day of January, 1887, as found by the court below. The appellee at this time paid the appellant the freight for all of the barrels consigned, upon "appellant's representation that one barrel was missing," but that it would "deliver this barrel in a few days." It never did, however, comply with this promise. There is no statement of facts, but the record contains the district judge's conclusion of law and fact. The court below found that the value of the barrel of whisky bought by plaintiff and consigned by him and appropriated or negligently lost by defendant was $91.12½ cents, and that plaintiff was entitled to recover the full value thereof as well as the freight paid thereon and with interest. The value thus found

by the court was evidently intended as at the point of destination, though the place of valuation is not expressly stated.

Defendant pleaded certain stipulations, claimed to be a part of the bill of lading and contract, as exempting it from full liability. These were not sustained by the court, and of this the appellant now complains.

The bill of lading was not signed by either the plaintiff or his consignor. Below the signature of the receiving carrier's agent on the receipt or bill of lading, and as a foot note, the following was printed: "Claims for loss or damage must be presented to the delivering line within *thirty-six* hours after the *arrival* of the freight." If this can be evidenced as any part of the contract and as reasonable, yet it is manifestly inapplicable and does not support the plea, because this particular freight for which the recovery was had was in fact *never delivered.* Besides, as found by the court below, the matter was waived by the promise and representation of the defendant when the other barrels were delivered. There was no error in the court below disregarding this plea.

Defendant also pleaded that by the terms of the contract the valuation of the goods should be fixed at the place of shipment, and that the value of the whisky at that point was only $20 per barrel, and that this value was agreed on by the terms of the bill of lading, and that the court erred in allowing the value at the point of delivery. The court found that across the face of the bill of lading was stamped the following clause: "Twenty dollars per barrel valuation and owner's risk of leakage, caused by cracked and broken staves, worm holes, or for any other cause not the *gross negligence* of the company."

The bill of lading contains among others the following clause relied on by defendant, viz.: "It is further agreed that in case of loss the amount of loss or damage shall be computed at the value or cost of the said goods or property at the place and time of shipment under this bill of lading." This stipulation and the above indorsement on the face of the receipt, construed together, amount to no more than an agreement between the consignor and the company that the valuation of the property should be fixed at the time and place of shipment, and that such value was then and there $20 per barrel. This is the most favorable construction to defendant that it is susceptible of. It can not be held to be tantamount to an agreement fairly and fully made between the appellee, as the owner of the goods, and the company mutually intended as stipulated damages, or absolutely fixing the only amount of damages that could be recovered in case the property should be lost or destroyed, but without the want of ordinary care upon the part of the carrier. Can the stipulation as made be legally enforced so as to limit the liability of the defendant to $20, the value at the point of shipment as given in the bill of lading? In all probability that is a false and undervaluation, even at that point. We are of the opinion that the

stipulation is void under the facts of this case. In the absence of any proof to the contrary, it must be presumed that the loss was caused by the negligence of the defendant. The liability of a common carrier to make compensation for goods or property lost by it extends at common law not only to the duty imposed upon it by law to safely transport the goods, but also to its responsibility to make reparation by way of damages in favor of the owner of the property to the fullest extent fixed and allowed by law in such cases. Any agreement that diminishes or destroys its liability in either of these respects would be contrary to public policy and void—certainly when the loss is attributable, in the eyes of the law, to the negligence of the carrier. Such is the character of the stipulation in this case, because no exception is made allowing full recovery in case the loss should be the result of even ordinary negligence. Railway v. Maddox & Co., 75 Texas, 300; Express Co. v. Hoeing, 11 S. W. Rep., 205 (Ky.). The stipulation being void, it could not lessen the defendant's liability under the law. In his excellent work on damages Field states the extent of that liability in cases like the present, and which rule has been adopted in this State, as follows: "The general rule of damages in an action against a common carrier, where he is liable for loss or for nondelivery of any portion of the goods which he undertook to deliver, is the value of the goods at the time and place where they should have been delivered, with interest, less the proper charges of transportation." Section 374. The court below, therefore, did not err in refusing to assess the value of the barrel of whisky at $20. To have done so would have been little short of a travesty of common sense and justice. Nor do we believe that in the absence of proof to that effect that Monarch & Co., as mere consignors, ought to be presumed to have been authorized to fix or consent for the plaintiff to the valuation of his goods at greatly less than their true value. The valuation of the property is ordinarily no part of the terms of the shipment, as the rights and duties of the parties are fixed by law. Railway v. Maddox & Co., *supra*.

Defendant also complains that the court below allowed interest and a recovery back of the freight paid by appellee on the barrel of whisky, amounting to $5.25. What we have already said as to the measure of damages disposes of the first of these points. There was no error in allowing legal interest as a part of the damages from the date of the conversion or nondelivery. But the other point here presented by appellant we believe to be well taken. We have just cited Field as to the measure of damages. That authority, as well as many others, shows that where the recovery is based on the value of the goods at the point of destination the freight charges should be deducted if not paid, and if paid then of course the value of property, without reference to the charges, is the criterion. Railway v. Fagan, 72 Texas, 132. The

object of the law is to give compensation for the injury, and no more. The carrier is compelled to pay the enhanced value of the property at the place of delivery. The owner, therefore, in recovering this value at the terminal point receives in substance and effect the benefits of the transportation as fully as if the goods had been transported and delivered to him, in which event he would have been bound to pay the cost of transportation. For these reasons, perhaps, in cases like the present the law gives the carrier the benefit of the freight charges in assessing the damages. But appellee contends, to obviate this point, that the value found by the court was the cost and value of the property at Owensboro, not San Antonio, and if that were true then the appellant would not perhaps be entitled to the freight on property it never delivered. The measure of damages in that contingency would be the actual cost or value of the goods lost and the cost of transportation, with interest, if no market value was shown at the place of delivery. We do not think, however, that this position of appellee is sustained by anything in the record. The court allowed "the full value" of the property, not merely the cost thereof, according to the findings. True, he does not say at what point he fixed the value, but it may be presumed that as the law designated the terminal point, that he tracked the law and meant that place in his finding of "the full value." Nor can we presume that the whisky shipped had no market value at San Antonio. It is more than probable that Kentucky whisky has some market value in that ancient and historic city. It seems to us that it is a fair inference that the whisky was purchased by appellee for market sale in San Antonio. He would scarcely have needed "five barrels (forty and one-half gallons each) of Monarch whisky" on one consignment for his own personal use. The account sued upon does not state where the value is to be estimated nor the original cost of the goods, but alleges and claims the "value" of the barrel lost in general terms, without reference to any place, "at $2.25 per gallon—$91.12½."

We have sustained the court below mainly upon its having estimated, as we understand from the record, the value of the property at San Antonio. We do not think that we would be justified in holding under the findings of that court that it intended and meant the value of the property at the place of shipment, though the amount found may in fact perhaps correspond to the real cost or value at that point, if that value had been disclosed. The only evidence on that point is that at Owensboro the value per barrel was $20, as we have seen.

We conclude that the judgment should, as the case was tried by the court, be reformed and affirmed, so as to allow plaintiff to recover of the defendant the sum of $91.12½, with legal interest thereon from the 15th day of January, 1887, to the date of the judgment in the District Court, and that thereafter and until paid interest shall be allowed on

the amount of that judgment at the same rate of 8 per cent per annum, and that plaintiff recover all costs in the District and Justice Courts, but that appellant recover of him the costs of the present appeal.

*Reversed and reformed.*

Adopted April 28, 1891.