St. Louis Southwestern Railway Company of Texas v.
Z. T. McIntyre.

Decided June 18, 1904.

**1.—Contract—Law of Forum—Public Policy.**

The rule that a contract valid where made is valid everywhere is subject to the exception that where the contract contravenes the settled policy of the law of the State where it is sought to be enforced, is terms will not be upheld,—as in case of a contract operating to exempt a common carrier in part from liability for loss of goods resulting from its own negligence.

**2.—Same—Common Carrier—Limiting Liability.**

Plaintiff shipped by rail household goods worth $300, the bill of lading reciting that in consideration of a reduced rate the carrier should be liable, in case of loss of the goods, only at the rate of $5 per 100 pounds. No other freight rate than the one paid was offered the shipper, and the railroad agent was not authorized to contract at any other rate. The goods were destroyed by fire en route, and at $5 per 100 pounds the carrier's liability would have been $63. Held that, even if the clause of the contract limiting the liability was valid in South Carolina, where the contract was made, it must be held invalid in Texas because the difference between the value of the property and the stipulated liability was so great as to render it unreasonable, and it did not appear that the parties to the contract mutually understood, intended and agreed upon $5 per 100 pounds as stipulated damages in case of loss of the property.

**3.—Common Carriers—Presumption of Negligence from Loss.**

Where in an action against a carrier for the value of goods shown to have been lost in transit no evidence is offered to explain the loss or show the absence of negligence, the law presumes the loss to have been occasioned by the carrier's negligence.

**4.—Evidence—Letters—Agency.**

A letter received by due course of mail, purporting to be written by the general claim agent of a railroad corporation, and upon its printed letter heads, in reply to a letter addressed to the corporation or to such claim agent and sent through the mail is presumptively genuine and authorized, and is admissible in evidence without further proof that such person is the general claim agent of the corporation or that the letter was written by the party by whom it purports to be signed.

Appeal from the County Court of Fannin. Tried below before Hon. Tom C. Bradley.

*E. B. Perkins, McReynolds & Hay,* and *Head & Dillard,* for appellant.

*R. M. Rowland,* for appellee.

TALBOT, Associate Justice.—Appellee, Z. T. McIntyre, sued appellant, the St. Louis Southwestern Railway Company of Texas, in the County Court of Fannin County, Texas, to recover the sum of $500, the alleged value of five boxes of household goods shipped by appellee at Spartanburg, S. C., January 5, 1903. Appellee alleged that said goods were delivered to the Southern Railway Company to be transported over the line of said railway company and other connecting carriers, destined to Ladonia, Texas; that the goods were delivered to and accepted by the appellant, and by its negligence were lost to plaintiff while in the possession of appellant.

The defendant by its amended answer pleaded specially, among other

things, that the bill of lading and shipping contract under which said goods were transported, stipulated that "the shipper may elect to accept the conditions printed on the face and back hereof and the reduced rate applying thereunder, or may, as provided below, require the carriage of the property at the carrier's liability," and in the event of loss or damage to such goods, the value of same was limited to $5 per hundred pounds of the weight of same; that such goods weighed 1260 pounds, and if it was liable in any sum to appellee, it was in a sum not exceeding $63; that said goods were transported at a reduced rate, and that the contract being made in South Carolina, where it was to be partly performed, same was valid, reasonable and binding, and prayed that in the event a recovery should be had against it, it would be for a sum not exceeding $63. Exceptions were sustained to this special answer, and the case tried without a jury on the 23d day of October, 1903, and judgment rendered in favor of the appellee for the sum of $300.

Appellant excepted to the judgment of the court below, and has perfected its appeal to this court.

The evidence is sufficient to establish the following facts: That on January 5, 1903, in Spartanburg, S. C., the Southern Railway Company received and accepted from plaintiff, Z. T. McIntyre, five boxes of household goods, weighing 1260 pounds, to be transported by said Southern Railway Company and connecting carriers from Spartanburg to Ladonia, Texas, and to be delivered at Ladonia to said Z. T. McIntyre, the consignee.

At the time of the delivery of said goods to the carrier at Spartanburg, plaintiff paid said carrier the freight charges demanded for a through shipment of the same from Spartanburg to Ladonia, which freight charges were $26.33.

The Southern Railway Company issued and caused to be delivered to plaintiff a bill of lading which recites, among other things, that in consideration of a reduced freight rate granted to plaintiff, he agrees to be bound by the following notation or stipulation written on the face of the bill of lading: "Value limited to $5 per 100 pounds, in case of loss or damage." Plaintiff's son attended to the shipping of the goods and received said bill of lading, and nothing was said between plaintiff, or his son, and the Southern Railway Company about the value of the good shipped, or about any other freight rate than the one the goods were shipped under.

The agents of the Southern Railway Company at Spartanburg were not authorized to accept a shipment of this character at any other freight rate than the one they charged plaintiff; plaintiff was offered no choice between the rate he paid and some other rate; and there was no consideration for the stipulation limiting the value of the goods to $5 per 100 pounds in case of loss or damage.

In the due course of transportation said five boxes of household goods were delivered by one of the carriers over whose lines they were routed, to the defendant, the St. Louis Southwestern Railway Company of

Texas; defendant in its capacity of common carrier accepted said goods for transportation by it over its line toward Ladonia, the point of destination, but defendant did not complete the carriage undertaken by it; none of the goods in question ever reached Ladonia, but were totally destroyed by fire while on defendant's line of railway and in defendant's possession.

On the trial of this case the defendant offered no evidence whatever to explain the circumstances connected with the destruction of the goods, and to rebut the legal presumption of negligence. In Ladonia, and at the time the goods should have been delivered, the value of the same amounted to the sum of $300, and plaintiff was damaged $300 by the loss of his goods.

Appellant's first assignment of error complains of the action of the court in sustaining appellee's exceptions to appellant's special answer. The question arising upon this ruling of the court is substantially presented by other assignments of error predicated upon the exclusion of evidence and the supposed erroneous conclusions of law reached by the court below, and such assignments need not be discussed in detail.

Appellant's contention, as shown by these assignments, is in effect that the contract of shipment having been made and to be partly performed in the State of South Carolina, the laws of that State govern in the interpretation and enforcement of said contract; that under the law of South Carolina a common carrier may by contract limit its liability or the amount of damages which may be recovered against it for loss or injury to property sustained by reason of its own negligence; that by the terms of the bill of lading in the shipment under consideration, appellant's liability was limited in the event of the loss of the property shipped to $5 per 100 pounds, and plaintiff's recovery should be limited accordingly.

The general rule undoubtedly is, that a contract valid where made is valid anywhere. But to this general rule, however, is the universally recognized and firmly established exception that where the contract contravenes the settled policy of the law of the State where sought to be enforced, its terms will not be upheld. In such case the comity existing between the States upon which the general rule above stated is founded, will not be allowed to thwart or interfere with the public policy of the State of the forum.

It may be doubted whether the contract in question here would be enforced in South Carolina. The decision of the court of that State, offered in evidence, as shown by the bill of exception in support of appellant's theory and contention that it would be, is, we think, distinguishable on the facts from the case at bar. In the South Carolina case there was a shipment of hogs under a special contract signed by the shipper, which contained stipulations "that the hogs were to be shipped upon the following contract, terms and conditions, which are admitted by me to be just and reasonable." The conditions of this contract, upon which the shipment was made, necessary to state, are as follows: "And

36 Civ.—26

I further agree that in the event the said East Tennessee, Virginia & Georgia Railway, or any of said connecting transportation companies, shall become or be held liable, for any reason or on any account, for any injury to or for the death of any of said stock, the valuation of injury or loss shall in no event exceed the following: For stallions or jacks, $200; for horses or mules, $100 each; for cattle, $30 each, and for other stock, $5 each." In stating the case the court says: "Here the plaintiffs, in consideration of the reduced rate of $98 per car load, have agreed that in case of loss the carrier shall be liable only for the valuation stated in such agreement, to wit, four hogs, $5 each;" and argues the case apparently upon the hypothesis that the parties fairly entered into a contract in which the value of the property shipped was ascertained and mutually agreed upon, and that the shipper "having reaped the advantage obtained by the special contract, must as a matter of common justice bear the burden which such contract imposes;" and consistent therewith, hold that proof that the hogs were worth more than the value agreed upon was inadmissible. In the case we are considering an ordinary bill of lading was issued by the initial carrier's agent, but not signed by appellee or anyone for him. There is no pretense that the value of the several articles of household goods shipped was discussed and agreed upon; certainly the bill of lading or contract does not fix any value upon them. The stipulation in the bill of lading, on the contrary, is simply an arbitrary limitation of the amount of appellant's liability in case of loss to $5 per 100 pounds weight of said property, without reference to its value. Appellant's agent at Spartanburg testified that he was not authorized to quote appellee any other rate than the one charged him, and could have made him no other. If, however, it be conceded that under the judicial decisions of South Carolina the contract in the present case would be enforced and plaintiff's recovery limited to $5 per 100 pounds of the freight shipped, or in the aggregate to $63, still we are not prepared to hold that it should be done in this State. We are of the opinion that the stipulation can not be legally enforced in this State so as to limit the liability of the appellant to $5 per 100 pounds of the freight shipped. There is such discrepancy in the actual value of the property as shown by the evidence and the amount to which appellant's liability was limited by the terms of the bill of lading as rendered the contract unreasonable and invalid. The actual value was $300, and the amount of appellant's liability limited to $63. The limitation of appellant's liability was unreasonably disproportionate to the freight charged, and it can not be said, under the evidence contained in the record, that the terms of the bill of lading limiting appellant's liability to $5 per 100 pounds of the property shipped were fully understood and agreed to by appellee as the owner of the goods, or by his agent, and mutually intended as stipulated damages that could be recovered in case the property should be lost.

The case of Galveston H. & S. A. Ry. Ry. Co. v. Ball, 80 Texas, 602, was a suit to recover the value of a barrel of whisky shipped from

Kentucky to San Antonio, which was lost or destroyed in transit. Defendant company pleaded certain stipulations claimed to be a part of the bill of lading as exempting it from full liability, or limiting its liability to $20, the value of the property at the place of shipment. These stipulations were not sustained. In discussing the question the court said: "We are of the opinion that the stipulation is void under the facts of the case. * * * The liability of a common carrier to make compensation for goods or property lost by it extends at common law not only to the duty imposed upon it by law to safely transport the goods, but also to its responsibility to make reparation by way of damages in favor of the owner of the property to the fullest extent fixed and allowed by law in such cases. Any agreement that diminishes or destroys its liability in either of these respects would be contrary to public policy and void,—certainly when the loss is attributable in the eyes of the law to the negligence of the carrier."

Again, the remarks of Judge Stayton in the case of the Southern P. Ry. Co. v. Maddox, 75 Texas, 300, which was a shipment of mules, we think peculiarly applicable to the facts of the case under discussion. He says: "The contract provided that the carriers should not be liable for a greater sum per head than therein stated, though the real value might, as was shown to be the case, be more than the highest sum named. In the absence of some law which authorizes a common carrier to relieve itself by contract from liability resulting from the negligence of itself or employes, it is well settled that this can not be done." In this connection we will state that there was no evidence offered on the trial of the case we are considering to explain the loss of appellee's goods, or show the absence of negligence on appellant's part with reference thereto. In such case we understand it is well settled that the law presumes the loss to have been occasioned by the carrier's negligence. We conclude that even if appellee's son was authorized to agree with appellant upon the valuation of the property shipped and to fix such valuation as the amount recoverable by appellee in case said property was lost, the same was not exercised; that the amount to which appellant's liability was attempted to be limited was arbitrarily fixed by appellant, and was an effort on its part to diminish its liability in the event of the loss or damage to the property through its negligence; that such restriction of its liability was unreasonable, against the settled policy of the law of this State, and void. That if valid under the law of South Carolina, where the contract was made, for the reasons stated it can not be enforced in the tribunals of this State. Missouri P. Ry. Co. v. Harris, 67 Texas, 169; Fort Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 104; Houston & T. C. Ry. Co. v. Williams, 31 S. W. Rep., 556; Sanger v. Jesse French Piano Co., 21 Texas Civ. App., 523, 52 S. W. Rep., 623; Building and Loan Assn. v. Griffin, 90 Texas, 480, 39 S. W. Rep., 660; Pennsylvania Ry. Co. v. Hughes, 51 Atl. Rep., 990; Railway v. Stone (Tenn.), 79 S. W. Rep., 1031.

Having reached the above conclusions, it follows that there was no

error in overruling appellant's application for a continuance, and that the case should be affirmed unless the trial court erred in admitting the letters in evidence, as shown by appellant's third assignment of error. The letters offered and admitted over appellant's objections are as follows:

"Cotton Belt Route. St. Louis Southwestern Railway Company of Texas. Accounting Department. Freight Claim Division. R. C. Hancock, Freight Claim Agent. In your reply please refer to W. R. 217.

"Tyler, Texas, Jan. 20, 1903.—Mr. Z. T. McIntyre, Ladonia, Texas: Dear Sir.—Five boxes household goods consigned to yourself at Ladonia were destroyed by fire on this line January 11th. Please send us your claim for value of this shipment, supported by original bill of lading, when same shall have prompt attention. Yours truly, R. C. Hancock, F. C. A. $63.00."

"Cotton Belt Route. St. Louis Southwestern Railway Company of Texas. Accounting Department. Freight Claim Division. In your reply refer to claim 35250.

"Tyler, Texas, April 21, 1903.—Mr. Z. T. McIntyre, Ladonia, Texas: Dear Sir.—Referring to your claim for value of household goods shipped from Spartansburg, S. C., January 5, 1903, to yourself at Ladonia, Texas, and which goods were destroyed by fire on this line:

"These goods, as you know, were shipped under a bill of lading limiting the liability of the railroads in event of loss or destruction to $5 per 100 pounds, and, in view of this contract, which I will say is valid and binding by the laws of South Carolina, you were quoted a lower rate than could otherwise have been obtained, or a lower rate than would have been given if the carriers had assumed all the risks of transportation at what these goods may have been worth. We can see no reason, therefore, why terms of this contract should not be adhered to, and according to the same, the goods weighing 1260 pounds, we would owe you just $63. If the amount will be accepted in full and satisfactory settlement of this claim, please draw without exchange on J. W. Hogan, treasurer of this company, Tyler, Texas, for $63, receipt for the money on forms next attached to accompany your draft, which will be paid at sight. Yours truly, R. C. Hancock, F. C. A."

The objections urged to the introduction of the above letters were: "(1) Because same were irrelevant and immaterial; (2) they have no reference to any issues in this case; (3) that the testimony and facts contained in same are hearsay; (4) that the execution of said letters had not been proved; (5) it was not shown that they came from any person, agent or employe of the defendant or person connected with it in any capacity authorizing any statement made on behalf of defendant that can bind the defendant in any manner." It will be observed that the letters objected to were written on what purports to be the letter heads of appellant. These letter heads bear the appellant's corporate name, appear to have been prepared for the use of its "Accounting De-

partment, Freight Claim Division," and the person, R. C. Hancock, whose name is signed thereto, is therein represented to be its freight claim agent. The contents of these letters show perfect familiarity on the part of the said R. C. Hancock with the nature of appellee's property and the points from and to which the shipment was made. It is shown that in obedience to the request contained in the first letter, appellee sent to the said R. C. Hancock his claim for damages, together with the original bill of lading issued to him at Spartanburg, S. C. In reply to this he received the following postal card, which was introduced in evidence on the trial of this case and not objected to, viz:

"Form 234 A. 11-1902-500-C. St. Louis Southwestern Railway Co.
of Texas. Accounting Department. Freight Claim Division.

"Tyler, Tex., ——, 190—. Dear Sir: We are this day in receipt of papers in the following claims:

| Your No. | Our No. | Nature of Claim. | Amount. |
|---|---|---|---|
|  | 35250 | L. D. | 639.15 |

and same shall have prompt attention. If any further communication is necessary, please refer to our number. R. C. Hancock, Freight Claim Agent."

Afterwards, on April 21, 1903, the second letter above set out was received by appellee at Ladonia in the due course of mail. As other circumstances showing that the said R. C. Hancock was the agent of appellant, and in writing said letters was acting within the scope and line of his employment, it appears that the attorney of appellant had corresponded with him a short time before the trial of this case in regard thereto, and had in his possession at the trial a letter from Hancock relative to the same, and declined, upon the request of appellee's counsel, to produce it to be used in evidence, for the reason that it was his private correspondence. He stated, however, that the letter received from Hancock was written on a printed letter of appellant similar to those in evidence and signed "R. C. Hancock, F. C. A." It also appears that upon the trial of the cause appellant's said attorney had in his possession and offered in evidence the original bill of lading sent by appellee to the said Hancock.

The rule is well established that the acts and declarations of the agent are inadmissible to establish agency; but as said by Judge Stephens in Stiff v. Fisher, 21 S. W. Rep., 294, "It is not required that the proof of agency be full and satisfactory before such acts and declarations are admissible." It is believed that the facts and circumstances shown on the trial in the court below, taken together, are sufficient to establish

that R. C. Hancock was appellant's agent, clothed with authority to adjust and settle claims against it of the character of appellee's claim.

That "a letter received by due course of mail, purporting to be written by the managing agent of a corporation, in reply to a letter addressed to the corporation and sent through the mail, is presumptively genuine and authorized, and is admissible in evidence without further proof that such person is the managing agent of such corporation or that the letter was written by the party by whom it purports to be signed," seems to be well recognized. Missouri P. Ry. Co. v. Gorman, 84 Texas, 141; Armstrong v. Advance Thresher Co. (S. D.), 57 N. W. Rep., 1131; Bloom v. State Ins. Co., 94 Iowa, 359. The letter dated Tyler, Texas, April 21, 1903, quoted above, was in reply to appellee's communication to appellant in which his claim for damages sued for in this case, together with the original bill of lading, was sent to appellant at its request, and received by Hancock in the due course of mail. This letter tended in part to establish the same facts as the first letter, and if the first letter does not fall within the rule above announced, we regard its admission in evidence harmless, in view of the other testimony in the case.

Our conclusion is that there was no reversible error in admitting said letters, and that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*