BALTIMORE & OHIO RAILROAD COMPANY v. ORIENTAL OIL COMPANY.

Decided June 13, 1908.

**1.—Carrier—Damaged Goods—Acceptance by Consignee—Promise of Indemnity.**

A consignee refused to accept a shipment of oil because it was in a damaged condition; the agent of the carrier, in order to induce the consignee to accept the oil, promised him that if he would accept it, strain, filter and measure it, and put in his claim for the damage and shortage, he, the agent, "would see him through." Held, the promise of the agent was admissible in evidence, at least, to show the inducement offered the consignee to receive the oil, and to show that by receiving it the consignee did not intend to waive his claim for damages.

**2.—Carrier—Liability for Leakage—Bill of Lading—Exemption.**

In order to avail itself of a clause in its bill of lading exempting it from liability for loss from leakage of oil during transportation, a carrier has the burden of proof to show not only that the cause of the loss was within the terms of the exception, but also that there was on its part no negligence or want of due care. Evidence considered, and held not sufficient to relieve a carrier from liability for such loss.

**3.—Carrier—Loss of Goods—Measure of Damage.**

Under the law of this State a stipulation in a bill of lading limiting a carrier's liability for goods negligently lost during transportation, to the value of the goods at the point of shipment, is contrary to public policy and void.

Appeal from the County Court of Dallas County. Tried below before Hon. H. F. Liveley.

*Saner & Saner* and *Don Robinson,* for appellant.—The court erred in permitting W. R. Smith and F. M. Smith to testify over the objection of the defendant that seventeen cents per gallon was what the oil cost plaintiff at Dallas, Texas, the plaintiff having alleged in its petition that seventeen cents per gallon was the market value of the oil at Dallas, Texas, at the time the shipment was made at Marietta, Ohio. In an interstate shipment a carrier may, by a special contract for a valuable consideration, limit its common law liability where such limitation is just and reasonable. St. Louis, I. M. & S. Ry. Co. v. Weakly, 8 S. W., 134; Trexler v. B. & O. R. R. Co., 28 Pa. Sup. Ct., 207; Arthur v. T. & P. Ry. Co., 139 Fed., 127; Missouri, K. & T. Ry. Co. v. Patrick, 144 Fed., 632; Baltimore & Ohio R. R. Co. v. Hubbard (Ohio), 74 N. E., 214.

When it is shown that the contract of shipment specially provided that, in case of damage or loss, the value of the oil at the place and time of shipment shall be the measure of damages, a judgment rendered for the plaintiff awarding damages based upon any other valuation is erroneous. Southern Pac. Co. v. Phillipson (T. C. A.), 39 S. W., 958; St. Louis, I. M. & S. Ry. Co. v. Weakly (Ark.), 8 S. W., 134; Baltimore

& O. R. R. Co. v. Hubbard (Ohio), 74 N. E., 214; Hart v. Pennsylvania Railroad Co., 112 U. S., 340; 9 Cent. Dig., "Carriers," 933-949.

*Crane, Gilbert & Crane,* for appellee.—In order to avail itself of the exemptions claimed in its contract the appellant must not only, by its evidence, bring itself within the exemption plead, but the burden is upon it to show that the loss did not occur through its negligence. Ryan v. Missouri, K. & T., 65 Texas, 13; Missouri Pac. Ry. v. China Mfg. Co., 79 Texas, 26; Texas & P. Ry. Co. v. Richmond & Tiffany, 94 Texas, 576.

The stipulation in the bill of lading limiting appellant's liability to the value of the goods at the point of shipment is contrary to public policy, and void. Galveston, H. & S. A. Ry. Co. v. Ball, 80 Texas, 605; Houston & T. C. Ry. Co. v. Davis, 31 S. W., 308.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was brought by the Oriental Oil Company as plaintiff, in the County Court of Dallas County, against the Baltimore & Ohio Railroad Company and the Gulf, Colorado & Santa Fe Railway Company, as defendants, to recover alleged damage and loss to shipment of oil from Marietta, Ohio, to plaintiff at Dallas, Texas. Appellee alleged that in July, 1905, it purchased of Great Western Oil Company 6,230 gallons of lubricating oil, which was delivered to appellant at Marietta, Ohio, in Sterling tank car No. 165 for transportation to Dallas, Texas. That when shipped the oil was in good condition, and free from any substance damaging to its use as lubricating oil. That the oil was shipped and billed as lubricating oil, and so denominated in the bill of lading issued by appellant, and it knew the kind of oil and the purposes for which it was intended to be sold by appellee. That any foreign substance, such as iron parings or shavings, dirt, grit, iron rust, renders such oil wholly unfit for the uses for which it was purchased. That appellant transferred said oil into car No. 9,721 of Union Tank Car Line, a rival of the Great Western, and said car No. 9,721 was dirty, and contained large quantities of dirt, grit, gravel, iron rust, iron parings, and other foreign substances, which rendered said oil wholly unfit for use as lubricating oil, and said car No. 9,721, when it reached Dallas, contained 1,379 gallons of oil less than were originally loaded into car No. 165. That the oil was unfit for use as lubricating oil, and defendants agreed that if appellee would accept and filter it that defendants would bear the loss of quantity and the cost of filtration.

The plaintiff further alleged that the market value of said oil at Dallas, Texas, was seventeen cents per gallon. The plaintiff prayed for judgment for $247.18.

The Gulf, Colorado & Santa Fe Railway Company answered that, by the contract of shipment, its liability was limited to damage occurring on its own line of railway, and that no loss or damage had occurred while the shipment was in its possession. The Baltimore & Ohio Railroad Company answered, setting forth that this shipment was made in equipment owned, controlled, kept in repair and inspected solely by the shipper, and over which the carrier assumed no control whatever, except

for the purpose of furnishing motive power for its transportation; that the loss was occasioned by a latent defect in the shipper's car; that the shipment was made under a special contract, and a special rate was made in consideration that the carrier would not be liable for leakage, and said special contract so provided.

Upon the trial the court rendered judgment in favor of plaintiff against the Baltimore & Ohio Railroad Company for $247.18, and in favor of the Gulf, Colorado & Santa Fe Railway Company for costs expended in this behalf.

Appellant's motion for new trial having been overruled, it perfected an appeal.

*Opinion.*—1. There was no error in admitting in evidence the testimony of the witnesses J. G. Fry, soliciting freight agent of the Baltimore & Ohio Railroad Company, and C. L. McManus, local freight agent of the Gulf, Colorado & Santa Fe Railway Company, that "they would see them through," if plaintiff would accept the oil. At the time these witnesses made the statement the oil was in Union Tank Car No. 9,721, and in the possession of the Gulf, Colorado & Santa Fe Railway Company, at Dallas, and in a damaged condition. The plaintiff had declined to accept the oil on account of its condition. This condition was the result of the oil being transferred at South Chicago to, and shipped in, Union Tank Car No. 9,721, which had not been in use for about twelve months, and contained dirt, grit, iron rust and scales. In order to induce plaintiff to receive the oil the witnesses told plaintiff that if it would accept the oil they would see it through; that if there was any way plaintiff could strain and filter the oil, and measure it, it could put in its claim for whatever the damage and shortage was, and they would see it through. This testimony was not a promise to answer for the tort of the witnesses' respective companies, but was a mere inducement held out by them to induce plaintiff to accept the oil. The condition of the oil was the result of the negligence of the railroad in transferring it to an unfit car and transporting the same therein. While the promise of the witnesses may not have created a liability on the part of their respective principals, the condition of the oil being the result of the negligence of the principals in transferring the oil to an unfit car, the evidence was admissible to show the inducement offered plaintiff to receive it, and to show that by receiving the oil it did not intend to waive its damages.

2. There was no error in admitting the testimony of W. R. Smith and F. M. Smith that the oil cost plaintiff seventeen cents per gallon at Dallas. These witnesses testified that the oil cost plaintiff, plus the freight, seventeen cents per gallon at Dallas; that the market value was much higher.

3. The next material question in the case is: Did appellant, by its evidence, bring itself within the clause of the bill of lading exempting it from liability for the loss of oil by leakage? Under the decisions in this State the burden of proof was on the carrier not only to show that the cause of the loss was within the terms of the exception, but also that there was on its part no negligence or want of due care. Ryan v. Mis-

souri, K. & T. Ry., 65 Texas, 13; Missouri Pac. Ry. Co. v. China Mfg. Co., 79 Texas, 26; Texas & Pac. Ry. v. Richmond & Tiffany, 94 Texas, 576. The evidence showed that there was put into Sterling Tank Car No. 165, at Marietta, Ohio, 6,320 gallons of cylinder stock oil in first-class condition; that the car was in good shape, and contained no leaks or cracks at the time, or at the time it was turned over to the Baltimore & Ohio Railroad Company and when the company took charge of it for transportation. The bill of lading of the appellant, dated July 13, 1905, shows the receipt of S. T. L. Car No. 165 for Great Western Oil Company, and that consignee was Oriental Oil Company, Dallas, Texas, and routed by South Chicago, care Santa Fe, and shows, under the description of articles, to be one tank car lubricating oil.

J. M. Randall, a witness for appellant, testified by deposition as follows: "Am car inspector for the Baltimore & Ohio Railroad Company in South Chicago, Illinois, and was during 1905. In the performance of my duties as car inspector, on July 17, 1905, I inspected Sterling Tank Car No. 165; found the car to be all right except that it was leaking oil. I do not at this time recall just where it was leaking, and if I ever knew it I can not recall what caused the leak. It is my recollection that the oil was dripping, rather than running in a stream. I put an order on the car, ordering it to be shopped so the leak could be stopped. I examined the car prior to the transfer of the oil, but know nothing concerning the transfer or the condition of the car into which it was transferred."

It is undisputed that the oil was transferred from Sterling Tank Car No. 165, because of the leak in that car, to Union Tank Car No. 9,721, by the employes of appellant. There was no evidence as to how the Sterling Tank Car No. 165 was handled by the agents and employes of appellant between Marietta, Ohio, and South Chicago, a distance of 445 miles. The burden being upon appellant to show that the leaky condition of the car was not the result of the negligence of its agents and employes in handling the car, the appellant failed to bring itself within the exception exempting it from liability for leakage.

4. The next question is: Was the clause in the bill of lading fixing the value of the oil at the point of shipment as the measure of damages, valid or controlling? The bill of lading contained a condition as follows: "No carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route. The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and at the time of shipment under the bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, etc." The loss of oil by leakage was, we hold, the result of appellant's negligence in the transportation of the car containing the oil from Marietta, Ohio, to South Chicago, and the damage to the oil was the result of appellant's negligence in transferring the oil to an unfit car. Under these facts the case of Galveston, H. & S. A. Ry. v. Ball, 80 Texas, 606, is in point. In that case the bill of lading stipulated that the amount of the loss or damage should be computed at the value or cost of the goods at the place of shipment. The question was as to the validity of this clause. Judge Marr, in his opinion, says: "The liability of a common carrier to make

compensation for goods or property lost by it extends at common law not only to the duty imposed upon it by law to safely transport the goods, but also to its responsibility to make reparation by way of damages in favor of the owner of the property to the fullest extent fixed and allowed by law in such cases. Any agreement that diminishes or destroys its liability in either of these respects would be contrary to public policy, and void—certainly when the loss is attributable, in the eyes of the law, to the negligence of the carrier. Such is the character of the stipulation in this case, because no exception is made allowing full recovery in case the loss should be the result of even ordinary negligence." Under the law of this State it seems clear that the stipulation in the bill of lading limiting appellant's liability to the value of the oil at the point of shipment is contrary to public policy and void. Southern Pac. Ry. v. Maddox, 75 Texas, 300; Galveston, H. & S. A. Ry. v. Ball, *supra;* Houston & T. C. Ry. v. Davis, 11 Texas Civ. App., 24. There was no attempt to prove the law of Ohio, or that this clause of the bill of lading was valid under the laws of that State.

5. The evidence shows that the loss to appellee by reason of the shortage was $234.43, the cost of a funnel for filtering and straining the oil made necessary by the presence of dirt, grit, iron rust and scales therein, was $4.75, and the labor in straining was $8.00, making a total of $247.18, the actual cost to plaintiff. The market value was much higher. The judgment was for $247.18.

We conclude that there is no error in the judgment, and the same is affirmed.

*Affirmed.*