### LANCASTER et al. v. McCARTY et al.* (No. 10093.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 13, 1913. Rehearing Denied Feb. 17, 1923.)

**1. Carriers ⊙⟹23—Liability of carrier for goods irrespective of stipulations in bill of lading held not changed by amendment to statute.**

Act Cong. Aug. 9, 1916 (U. S. Comp. St. § 8604a), amending Cummins Act March 4, 1915, § 1, regulating interstate commerce, did not change the law that a common carrier is liable to the holder of a bill of lading for the actual loss or damage to goods shipped, and cannot limit such liability by stipulations in the bill of lading.

**2. Commerce ⊙⟹7—Intrastate shipments governed by state rate and regulations, where not discriminatory against interstate commerce, and limitations of liability in bill of lading invalid.**

The Interstate Commerce Commission is not authorized to establish rates governing intrastate shipments, where the state rates do not discriminate against nor affect interstate commerce, such intrastate rates being governed by state law and the rules and regulations of the State Railroad Commission, and hence, under Rev. St. art. 708, a stipulation in the bill of lading on an intrastate shipment, limiting liability of the carrier, is invalid, and recovery of actual value is allowed.

**3. Carriers ⊙⟹132—The presumption is that goods lost or damaged in intrastate commerce was through carrier's negligence.**

In the absence of proof to the contrary, it will be presumed that the loss of and injury to goods in intrastate commerce was caused by the negligence of the carrier.

Appeal from Eastland County Court; J. H. Jones, Judge.

Action by B. W. McCarty and others against J. L. Lancaster and another, receivers for the Texas & Pacific Railway Company. From a judgment for plaintiffs, defendants appeal. Reformed and affirmed.

Conner & McRae, of Eastland, and Robert Thompson, of Dallas (R. S. Shapard, of Dallas, of counsel), for appellants.

Patterson & Sherry, of Cisco, for appellees.

BUCK, J. This is a suit by B. W. McCarty, Guy McCarty, Lloyd McCarty, and George Harris, partners doing business under the style and firm name of Cisco Furniture Company, hereinafter called plaintiff, against J. L. Lancaster and C. L. Wallace, receivers for the Texas & Pacific Railway Company, a corporation.

Plaintiff alleged that on March 13, 1920, there were shipped to it at Cisco from Fort Worth two breakfast chairs and one straight chair and two rugs, and that the defendants duly accepted the same to be safely and securely transported over said railroad to the city of Cisco with ordinary care and reasonable diligence, and to be safely and securely delivered to plaintiff at Cisco, and that the reasonable charges for said shipment were paid to defendants on the delivery thereof to plaintiff; that defendants were negligent in the transportation of said property, and that by reason of said negligence said rugs were permitted to come in contact with an acid or other fluid, by reason of which a large hole was eaten out of the center of each of said rugs, thereby rendering the same worthless and valueless; that said rugs were reasonably worth $95 each; that the two breakfast chairs mentioned were damaged and injured to the extent of $2.50 each; that the straight chair mentioned was damaged and injured in the sum of $3, the total damages being $198, for which plaintiff sued, and asked that an attorney's fee of $20 be allowed in addition.

The defendants answered by a general denial, and specially pleaded that the goods were shipped from the Ellison Furniture & Carpet Company under a written contract and agreement duly executed by and between the said Ellison Furniture & Carpet Company and the defendants; that said shipment was received and transported subject to the regulations and rules of the railroads of Texas and of the Interstate Commerce Commission, and of the classification of freight rates as fixed by the Western Classification of such freight rates as adopted, duly posted, and filed with the Interstate Commerce Commission and in force at the time of the transportation of the goods; that the shipper of said goods placed a valuation on the rugs of $75 per 100 pounds, and that under the rule and under the tariff rates as fixed and adopted by the Interstate Commerce Commission the plaintiff received the

benefit of a less freight rate than it would have received had a greater valuation been placed thereon; and that under the law it was limited to its right of recovery to the value so fixed.

The cause was tried before the court without the intervention of a jury, and a judgment was rendered for the plaintiff for $198 damages and $20 attorney's fee, together with interest thereon from date of judgment, less a credit of $10. The credit of $10 was awarded, evidently on the ground that the rugs, even in their damaged condition, were worth said sum. The defendants have appealed.

The cause comes before this court on an agreed statement of facts. It is agreed that on March 12, 1920, the Ellison Furniture & Carpet Company shipped the goods, for the damage to which suit was filed, together with other furniture, and that a bill of lading was issued by the defendants, and that upon said bill of lading was stamped the following notation: "Valuation on rugs less than $75.00 per 100 pounds." There is no other stipulation or condition contained in the bill of lading affecting the issues herein involved, nor any reference to any rates adopted by the Interstate Commerce Commission. Section 12 of the conditions on the back of the bill of lading is as follows:

"This bill of lading is given subject to correction as to rate, weight and classification, so as to conform to the rates, rules and regulations prescribed by the Railroad Commission of Texas."

Section 13 provides:

"No agent of this railway has authority to make an oral contract for the shipment of freight and this bill of lading contains all of the provisions of the contract of shipment between the parties hereto, and no qualifications, alterations, erasures in or additions to the conditions thereof, shall be made except under the written directions of the general freight agent, or the auditor for receivers, attached hereto."

No such directions are attached to the bill of lading. It is admitted the goods were delivered to the defendants in good condition, and that the shipper placed a valuation on the rugs mentioned in said contract of less than $75 per 100 pounds. That upon arrival and delivery of said goods at Cisco, two of said rugs were practically ruined with acid, and were of the reasonable market value of $5 each. That each of said rugs weighed 40 pounds, or in the aggregate 80 pounds. That the two breakfast chairs were damaged, broken, and injured, and the cost of repairing the same was $5, which was a reasonable charge. That $3 was a reasonable charge for the repair of the other chair. That at the time of making said shipment, which was a shipment of less than a carload, Western Classification No. 56, R. C. Fyfe's

Interstate Commerce Commission No. 14 and items 1, 2, and 3 were in force and effect, having been duly adopted and filed with the Interstate Commerce Commission. The extracts from the rates adopted by the Interstate Commerce Commission and contained in the statement of facts are as follows:

"1. N. O. I. B. N. Value declared in writing by the shipper, or agreed upon in writing as the released value of the property, in accordance with the following:

"2. If not exceeding $75.00 per 100 pounds, in burlapped bales or rolls, or in boxes or wrapped bundles, see notes 1 and 2.

"3. If exceeding $75.00 per 100 lbs., and not exceeding $125.00 per 100 lbs., in burlapped bales or rolls, or in boxes or wrapped bundles, see notes 1 and 2.

"Note 1. The value declared in writing by the shipper, or agreed upon in writing as the released value of the property, as the case may be, must be entered on shipping order and bill of lading as follows:

"'I hereby declare the value of the rugs herein described as $—— per 100 lbs.'

"——————.
[Shipper's signature.]

or

"'The value of the rugs herein described is hereby agreed upon as $—— per 100 pounds.'

"——————.
[Shipper's signature.]

"2. Rugs of value not exceeding $125.00 per 100 lbs., shipped in bundles must be completely wrapped in three or more thicknesses of Sulphite Kraft Paper weighing not less than 60 lbs., per ream (480 sheets, 24x36 inches), securely tied and knotted at each crossing with polished unoiled hemp twine or rope having a breaking strength not less than the weight of the package and in no case less than 100 lbs. (Issued under authority of Interstate Commerce Commission's Released Rate Order No. 85 of November 13, 1919.)"

That the rates so established by the Interstate Commerce Commission, based on Texas lines, mileage circular, were 70 cents per 100 pounds on rugs not exceeding in value $75, and where such value exceeded $75, but did not exceed $125, the rate was $1.05 per 100 pounds, and that such rates and classifications were in full force and effect on March 12, 1920. That the rugs for damage to which this suit was brought fell within such classification, and that the freight rate paid at the time of the delivery of the shipment was based upon such valuation. That said tariff and Western Classification, as hereinbefore set out were put into effect in pursuance of an order of the Interstate Commerce Commission entered in what is known as the Shreveport Rate Case, and were made by such order applicable to intrastate as well as interstate shipments. That the plaintiff herein duly filed, within the time provided by law, a claim for damages in this case, and the defendants failed and declined to pay the same within the time provided by law, and $20 is a reasonable claim

and charge for attorney's fees in this case.

Appellants' contention is that the rates established by the Interstate Commerce Commission are applicable in this case, although it was in intrastate shipment, and that the merits of the case must be decided by the decisions of the Supreme Court of the United States and other federal courts, and not by the laws of Texas, shown in the statutes and in the decisions of the Supreme Court and the Courts of Civil Appeals of Texas. Their contention is that in the Shreveport Rate Case (H. E. & W. Tex. Ry. Co. v. United States, 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341) and in the Minnesota Rate Case (Simpson v. Shepard, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18) and in other decisions the Supreme Court of the United States has decided that Congress has the right to regulate intrastate commerce on interstate lines, such as the Texas & Pacific Railway Company, and that the rates and rules established by the Interstate Commerce Commission are binding on the parties to this contract, without reference to any statute of the state or any holding of the state courts. We understand that the holding of the Supreme Court in the first-cited case is that Congress, in the exercise of its paramount power, may prevent the common instrumentalities of interstate and intrastate commercial intercourse from being used in their intrastate operations to the injury of interstate commerce, and that Congress has the right to control intrastate rates maintained by an interstate carrier, under other authority, to the extent necessary to remove any unjust discrimination against interstate commerce arising out of the relation between such intrastate rates and interstate rates which are reasonable within themselves; and that the Interstate Commerce Commission has authority to control the intrastate rates maintained by the carrier under other authority to the extent necessary to remove such discrimination. There is no contention, and certainly no proof, to sustain such contention in this case, that the rates charged by state authority upon the shipment in question were unreasonable or discriminatory, or interfered with or affected interstate commerce in any way. As it seems to us, the issues involved in the cases cited by appellants are not involved here. By act of March 4, 1915, popularly known as the Cummins Act, Congress enacted an amendment to previous legislation regulating interstate commerce, found in Federal Statutes, Supp. 1916, pp. 124, 125. By act of August 9, 1916, this act was further amended. See Federal Statutes, Supp. 1918, pp. 387, 388 (U. S. Comp. St. § 8604a), which reads in part as follows:

"Provided, however, that the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value. and declaring any such limitation to be unlawful and void, shall not apply, first, to baggage carried on passenger trains or boats, or trains or boats carrying passengers; second, to property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section ten of this act to regulate commerce, as amended; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared or agreed upon; and the commission is hereby empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation. The term 'ordinary live stock' shall include all cattle, swine, sheep, goats, horses, and mules, except such as are chiefly valuable for breeding, racing, show purposes, or other special uses."

[1] Even if the Interstate Commerce Commission was authorized to determine the rates and rules governing this shipment, it would appear from C. M. & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801, that the Supreme Court has held that a carrier shall be liable to the holder of a bill of lading for the full actual loss, damage, or injury, notwithstanding any limitation of liability or limitation of the amount of recovery, or any representation or agreement as to value. The shipment in the last-cited case was made prior to the amendment of August 9, 1916, heretofore quoted, but we do not see that the amendment so changed the law as to make the decision of the Supreme Court in the decided case inapplicable.

[2] But we do not see that the Interstate Commerce Commission would be authorized, under the state of facts here shown, to establish rates governing shipment in the instant case, but think that such shipment would be governed by the laws of this state and the rules and regulations issued by the State Railroad Commission and the rates established by it. There is no evidence of any discrimination against interstate commerce by reason of rates sought to be established by the state authorities. Hence we conclude that the issues herein involved must be determined by the state law. Article 708, Revised Statutes, provides that:

"Railroad companies and other common carriers of goods, wares and merchandise, for hire, within this state, on land or in boats or vessels on the waters entirely within the body of this state, shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid."

[3] In the absence of proof to the contrary, it will be presumed that the loss of and injury to intrastate shipments was caused by the negligence of the carrier, so that the limitation of liability in the contract is not valid under article 708. Southern Pac. Ry. Co. v. Maddox & Co., 75 Tex. 300, 12 S. W. 815; Railway Co. v. Ball, 80 Tex. 602, 16 S. W. 441; Railway Co. v. Cox (Tex. Civ. App.) 221 S. W. 1043; St. L. S. W. Ry. Co. v. Morehead (Tex. Civ. App.) 207 S. W. 336, writ denied. Therefore the main contention of appellants must be overruled.

Plaintiff below recovered attorney's fees doubtless on the strength of article 2178, Revised Statutes. Suit was filed for $198 damages and $20 attorney's fees. Judgment was awarded for $208. In other words, plaintiff recovered $10 less than it sued for. Appellees concede that the assignment directed to the error of awarding attorney's fees to plaintiff is well taken, and agree that the judgment may be reformed by subtracting $20 from the judgment awarded by the court below. Therefore we will so reform the judgment, and, as reformed, the judgment will be affirmed, with costs of this appeal taxed against the appellees.