# SALVATORE DI VITA AND OTHERS v. JOHN BARTON PAYNE, DIRECTOR GENERAL OF RAILROADS, ETC.[1]

July 8, 1921.

No. 22,341.

**Appeal and error — admissibility of record entries — discretion of trial court.**

1. Whether record entries relative to the issues made in the regular course of business are properly verified as a basis for receiving them in evidence, is a question for the exercise of practical sense and sound discretion by the trial judge, and his decision will not be disturbed on appeal if there is any evidence reasonably supporting it.

**Railway — duty to provide suitable cars for class of shipment.**

2. It is the duty of a railway company as a common carrier to furnish suitable cars for the transportation of the particular class of goods intended to be shipped, and it is not relieved from such duty by reason of the fact that the consignor inspected the car before loading.

**Damage to shipment in transit — recovery from initial carrier.**

3. Proof of the delivery of a shipment by consignor to the carrier in good condition and of its delivery to the consignee at the end of the route in damaged condition, is sufficient to sustain a recovery for damages against the initial carrier.

**Liability of carrier for safe transportation of shipment.**

4. A common carrier is an insurer of the safe transportation of goods committed to it for that purpose, and responsible for all damages to the same while in transit, unless such damage is occasioned by certain excepted causes.

**Exemption of liability must come from certain excepted causes.**

5. To relieve itself from such liability the carrier must show that the damage arose solely from one or more of the excepted causes, and it avails it nothing to show that the shipper was negligent if the damage would not have resulted except for the concurring fault of the carrier.

[1]Reported in 184 N. W. 184.

Action in the district court for Hennepin county to recover $1,066.85 damages to a carload of flour while in transit. The case was tried before Molyneaux, J., who made findings and ordered judgment in favor of plaintiffs for $1,176.63. Defendant's motion for additional findings was granted and his motion to amend the findings was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Stringer & Seymour,* for appellant.

*George C. Stiles* and *F. M. Miner,* for respondent.

QUINN, J.

This action was brought against the Chicago, Rock Island & Pacific Railway Company to recover for damages to a carload of flour while in transit from Minneapolis to Niagara Falls. Subsequently John Barton Payne, director general of railroads, was substituted as defendant, and all the carriers referred to were operated by him. The Minneapolis Eastern Railway Company is a belt line in Minneapolis upon which the Pillsbury mills are located. Practically speaking, it is a terminal switching system in the milling district of Minneapolis. The Pillsbury Flour Mills Company was engaged in shipping both flour and feed and kept standing orders with the railroads for cars for both commodities. The plaintiff resides and is engaged in business at Niagara Falls in the state of New York. The Chicago, Rock Island & Pacific Railway Company has a line of road from Minneapolis to Chicago, where it connects with the Erie line which extends easterly through Niagara Falls. It was over these roads that the car of flour in question was transported from Minneapolis to Niagara Falls and there delivered to the plaintiff. As we gather from the record, the person referred to as the "car inspector of the Minnesota Transfer Railroad" was employed by and acted as the agent of all the carrier lines entering the Twin Cities.

The plaintiffs had purchased a carload of flour from the Pillsbury company, to be shipped to them at Niagara Falls. On November 1, 1918, an empty NYC box car was standing on the Minneapolis Eastern tracks near the mills, when a car inspector of the Minnesota Transfer Company inspected the same as to its suitability for the shipment of flour. He found and reported that the car had a leaky roof and made the

following notation on the side of the car with white chalk: "Leaky roof; no good for flour, O. K. for feed." This was the method of designating the condition of cars. On the following day the car was placed on the Pillsbury company track for loading. An employe of that company made an inspection of the car and reported it in good condition. On November 4 the Pillsbury company loaded the car with flour, made out a bill of lading in the standard form and delivered it to the joint agent of the railroads in Minneapolis for execution. The bill of lading was issued, and, together with the car of flour, delivered to the Chicago, Rock Island & Pacific Railway Company, for transportation to the plaintiffs at Niagara Falls. The contents of the car were damaged in transit by rain leaking through the roof. The cause was tried to the court without a jury, findings made and judgment ordered in favor of plaintiffs. Appellant moved for amended findings and for a new trial. This appeal was taken from the judgment subsequently entered upon the findings and order as amended.

Two reasons are urged why the judgment should be reversed: First, that it was error to receive in evidence the record containing the report of the inspector of the Pillsbury company with reference to the condition of the car, because no proper foundation had been laid therefor; and, second, the general proposition that the findings, decision and judgment of the court below were not supported by the evidence and should have been made in defendant's favor.

Upon the trial defendant offered testimony tending to show that an inspection of the car in which the flour was shipped was made by the car inspector of the Minnesota Transfer Railroad and certain markings made thereon by him indicating that the roof was not in suitable condition for the shipment of flour, as bearing upon the shipper's knowledge of the condition of the car at the time of loading. This testimony was received over plaintiff's objection. To controvert the same respondent produced from the records of the Pillsbury company its car book in which was kept a record of all cars loaded and shipped. This record was made in the usual course of business and preserved by the company as evidence of the facts it purported to show. The book contained the written report of the Pillsbury company's inspector to the effect that on the day before the car was loaded it was in proper condition for the

shipment of flour. This inspector was not produced as a witness as he was not then in the employ of the company and his whereabouts was unknown. Under the rule announced in Swedish-Am. Nat. Bank of Minneapolis v. Chicago, B. & Q. Ry. Co. 96 Minn. 436, 105 N. W. 69, the record was admissible. See also 1 Dunnell, Minn. Dig. § 3346.

It is the duty of a railway company as a common carrier to furnish suitable cars for the transportation of the particular class of goods intended to be shipped, and it is not relieved from such duty by reason of the fact that the shipper inspected and accepted the car before loading. It appears that the inspector of the transfer company, acting for appellant, inspected the car two days before it was loaded. He found the roof leaky, marked the car not suitable for flour, and so reported to his superiors. As soon as the car was loaded with flour, appellant accepted it and undertook to transport the same to its destination. When appellant received the bill of lading issued by the joint agent, it had full notice that the car, which the inspector had condemned two days before, was loaded with flour and offered for shipment. In accepting the same under such circumstances, it cannot be held that the carrier is not liable for damages to the shipment on account of the defective condition of the car. Shea v. Chicago, R. I. & Pac. Ry. Co. 66 Minn. 102, 68 N. W. 608; Leonard v. Whitcomb, 95 Wis. 646, 70 N. W. 817.

The trial court found that the car was unsuitable for the shipment of flour; that it was furnished by defendant for the transportation of either flour or feed; that defendant caused the same to be inspected and caused to be written with white chalk upon the side of said car the words "Leaky roof; no good for flour, O. K. for feed;" that when the same was loaded said words appeared thereon; that this was the method and practice adopted by defendant in designating the condition of cars as to their suitability for shipping either flour or feed, of which the Pillsbury company was aware; that it was the practice of the Pillsbury company to cause to be inspected cars furnished it for shipment of flour or feed for the purpose of ascertaining their fitness for such use; that the car in question was inspected by its inspector on November 2; that said inspector determined and reported that the roof was in good condition and that the car was previously loaded with grain; that the Pillsbury company was unaware of the fact that said car had been so marked and

had no knowledge that its roof was in a leaky condition. Proof of the delivery of the shipment to the carrier in good condition and of its delivery at the end of the route in damaged condition, is sufficient to sustain a recovery for damages against the initial carrier.

The Carmack amendment to the Hepburn Act as enacted June 29, 1906 (U. S. Comp. St. § 8604a), provides, in effect, that any common carrier, railroad or transportation company, receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company, from the liability thereby imposed; provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

The general rule is that a common carrier of goods is an insurer of the safe transportation of the goods committed to it for that purpose, and it is responsible for all damages to the same while in transit, unless such damage is occasioned by certain excepted causes. These causes are: The act of God, act of public enemy, the inherent quality or "proper vice" of the articles themselves, or some act or omission of the shipper or owner. The case under consideration does not come within the exceptions. To relieve itself from liability the carrier must show that the damage arose solely from one or more of the excepted causes, and it avails it nothing to show that the shipper was negligent, if the loss or damage would not have resulted except for the concurring fault of the carrier. Northwestern M. & T. Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L.R.A. 1915D, 1079; Duncan v. Great Northern Ry. Co. 17 N. D. 610, 118 N. W. 826, 19 L.R.A.(N.S.) 952, and note. See also note L.R.A. 1915C, p. 1223. The damage was the direct result of the defective car. The loading was proper, and but for the leaky roof there would have been no damage from rain.

Appellant's car inspector testified that on November 1 the car was on the unloading track; that it had been formerly loaded with wheat;

that he inspected it carefully, found a leaky roof unfit for flour and so marked and reported it; that his attention was called to the leaky roof by water stains on the inside of the car. The Pillsbury company's inspector also inspected the car, but, as appears from his report contained in the record testimony offered, did not detect the leaky condition of the roof, and the trial court found that the Pillsbury company had no notice or knowledge either of the leaky roof or of the marking of the car by appellant's inspector.

The finding, in our opinion, is justified by the testimony. It was a question of fact to be determined from the evidence.

Affirmed.