## COLE v. BUTLER.

### No. 7515.

Court of Civil Appeals of Texas. Austin.

Jan. 21, 1931.

Rehearing Denied Feb. 18, 1931.

Jno. B. Daniel, of Temple, for appellant.

Sam D. Snodgrass, of Temple, for appellee.

BLAIR, J.

Appellee sued appellant for damages resulting from appellant's fraud in inducing a trade or exchange of appellee's 35 shares of Bell Baking Company, Inc., stock, valued at $100 per share, for appellant's north 100 feet of lots 3 and 4, in block 19, Methvin's addition to the city of Temple, valued at $6,000, appellee executing five notes for $500 each, secured by lien on the real estate for the difference in the value of the properties exchanged; and upon a special issue verdict he recovered judgment for $2,400 actual damages and $2,700 exemplary damages; hence this appeal.

In substance the jury found in answer to special issues submitted that appellant falsely and fraudulently represented to appellee as follows:

Issue 1. That appellant's real estate was located within four blocks of the Scott & White Hospital in Temple, Tex.

Issue 2. That the improvements on said property consisted of a large, well-arranged, modern two-story house in good repair, and that the building was equipped with all modern improvements, including sewerage and natural gas connections.

Issue 3. That the property was then in the possession of a tenant who was paying a rental of $50 per month, and that during all the time of appellant's ownership of said property it had produced a revenue of $50 per month.

Issue 4. That appellant had already leased the property to a new tenant at $60 per month, said new lease to begin on December 10, 1928.

Issue 5. That appellant gave $6,000 for said property, and at one time borrowed $2,500 on the same, and that said property had a stable market value of $6,000.

The jury were instructed that, if they "answered all or any of the foregoing special issues, Numbers 1, 2, 3, 4, and 5, 'yes,'" then to answer issues 6 and 7; which issues and the jury's answers thereto read as follows:

Issue 6. "Do you find from a preponderance of the evidence that such representation, or representations, if any, referred to in the foregoing five special issues, or any of them were made, if made, by the said Cole to said Butler as a material inducement to the latter to enter into said exchange of properties be-

tween them involved in this stuff? Answer 'yes' or 'no.'" Answer: "Yes."

Issue 7. "Do you find from a preponderance of the evidence that plaintiff Butler would not have entered into said exchange of properties with defendant Cole had such representation, or representations, if any, not been made by the said Cole? Answer 'Yes' or 'No.'" Answer: "Yes."

In substance the jury further found as follows:

Issue 8. That the reasonable market value of the real estate at the time of the trade or exchange was $3,250.

Issue 9. That the reasonable market value of the 35 shares of stock in Bell Baking Company, Inc., at the time of the trade or exchange, was $3,150.

The jury were instructed that, if they had "answered all or any of the foregoing special issues, numbers 1, 2, 3, 4, and 5 'Yes,'" then to answer the following Issue 10:

"Do you find from a preponderance of the evidence that such representation, or representations, if any, were wilfully made (that is, knowingly and designedly made with evil intent and purpose), if made, by said Cole to said Butler? Answer: 'Yes' or 'No.'" The jury answered the issue, "Yes."

The jury further found as follows:

Issue 11. That the amount of appellee's exemplary damages was $2,700.

Appellant's requested issue 1. That appellee did not inspect the real estate conveyed to him by appellant before the delivery of the deed to same.

In the charge to the jury, the court assumed without objection on the part of appellant that the reasonable market value of the five notes, executed by appellee in part payment of the real estate, was $2,500, their face value. Appellant testified that such was their value. In arriving at the amount of actual damages, the trial court added the face value of the notes, $2,500 to the $3,150 found by the jury to be the reasonable market value of the stock given by appellee in exchange for the real estate, and subtracted from this total the $3,250 found by the jury to be the reasonable market value of the real estate; the difference being $2,400. Thus the court applied the rule that the measure of damages in contracts induced by fraud for the trade or exchange of property is the difference in value between the property given and that received.

We sustain appellant's first proposition that issue 1 should not have been submitted to the jury over the objection that no damages were shown to have resulted from the representation that the real estate involved was located within four blocks of the Scott & White Hospital. Appellee admits that no evidence was introduced to show whether the real estate would have had a greater value if located within four blocks of this hospital, instead of seven blocks, as shown by the evidence. It is settled law that "both fraud and damage must concur to constitute actionable fraud, a common statement of the rule being that neither fraud without damage, nor damage without fraud, is sufficient to support an action." 12 R. C. L. 240, § 10; Pasley v. Freeman, 3 T. R. 51; Hope v. Shirley (Tex. Civ. App.) 187 S. W. 973; Avery Co. v. Harrison Co. (Tex. Com. App.) 267 S. W. 254. Appellee counters with the proposition that the error in submitting this issue without its being supported by evidence is immaterial, since the judgment finds ample support in the false representations presented and found by the jury's answers to issues 2, 3, 4, and 5, each of which submitted a separate and distinct ground of fraud. This contention cannot be sustained, because there is no specific finding of the jury that all or either of the false representations presented by these four issues induced appellee to make the contract, or that he would not have made the contract but for all or either of such representations. Issues 6 and 7, which presented these two necessary elements of fraud, and the court's instructions to the jury in connection therewith, first grouped the five separate grounds of fraud relied upon, and authorized the jury to give an affirmative answer to issues 6 and 7, if they had answered all the "foregoing five special issues" in the affirmative. In the alternative, the jury were authorized to give an affirmative answer to issues 6 and 7, if they answered either of the "foregoing five special issues" in the affirmative. Issue 1, to which the jury gave an affirmative answer, was erroneously submitted, because it had no support in the evidence, and it may have been that the jury gave their affirmative answers to issues 6 and 7 upon their belief that the false representations presented by issue 1 was the sole cause which induced appellee to execute the contract, and that he would not have executed same but for that sole false representation. In other words, because of this grouping of all issues, including the one erroneously submitted and authorizing the jury to answer issues 6 and 7 in the affirmative, if they found that appellant made all the false representations presented by all of the five issues, and in the alternative, authorizing the same affirmative answer of the jury to issue 6 and 7, if they found that appellant made the false representation or representations presented by either of the five issues, including the one erroneously submitted, we are therefore unable to determine whether the jury based their affirmative answers to issues 6 and 7 upon their affirmative answers to all five issues submitted, or upon any specific one of them; and their affirmative answers to issues 6 and 7

may have been based upon the affirmative finding of false representation as presented by issue 1 alone, which was erroneously submitted. And this same error applies with equal force to the manner of submitting issues 10 and 11, regarding exemplary damages.

By propositions 7 and 11, appellant contends that in submitting issues 8 and 9 the court so framed them as to arrive at the measure of damages applied by the court, that is, the difference in value between the property given and that received in the trade or exchange; but that issues 10 and 11 were so framed as to arrive at the measure of damages fixed by article 4004, which is the difference between the actual and the represented value of the real estate conveyed; "and that by reason of such conflict it was entirely impossible for the jury to arrive at a just verdict." Neither measure of damages was submitted to the jury, but merely issues for findings of fact upon which the court might later apply the proper measure of damages. No doubt the court submitted the case in this manner because of appellant's objection that the charge did not submit the proper measure of damages, that is, the difference in value between the property given and that received in the exchange, and we commend this manner of submitting the case.

Since we are reversing the case on other grounds, the question of the sufficiency of the pleadings to support the measure of damages applied by the trial court is immaterial. If deficient in this regard, they may be amended before another trial.

By proposition 9, appellant contends that the evidence adduced would not authorize the submission of exemplary damages, and that the court abused its discretionary power in submitting to the jury that issue. We do not sustain the contention. The evidence shows that appellant had been the trusted agent of appellee in handling his financial difficulties; that he obtained the charter for appellee incorporating the Bell Baking Company; that appellee had the utmost confidence in appellant; that at the time of the exchange agreement appellee was relying on appellant as his then business associate to get the baking company out of its financial difficulties; that appellant made excuses, and did not show appellee the real estate before the trade was closed. And the evidence sustains the jury findings of false representations on the issues submitted. Article 4004; Hawthorne v. Walton (Tex. Com. App.) 30 S.W.(2d) 397; Whitehead v. Reiger (Tex. Civ. App.) 282 S. W. 651, affirmed (Tex. Com. App.) 6 S.W.(2d) 745.

We have carefully examined appellant's remaining propositions, and find that neither of them presents error requiring a reversal of the case. However, in view of another trial, we suggest that the instructions given in connection with issue 11 be eliminated, and that, in lieu thereof, the jury be merely told to answer issue 11 if they have answered issue 10 "Yes"; that exemplary damages be properly defined if requested; and that the amount of recovery of exemplary damages be limited as provided by article 4004.

For the reasons above stated, the judgment of the trial court will be reversed, and the cause remanded for another trial.

Reversed and remanded.