### HAYDEN et al. v. DUNLAP.
### No. 11647.

Court of Civil Appeals of Texas. Dallas.
May 18, 1935.

Rehearing Denied June 22, 1935.

Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellants.

Seay, Malone & Lipscomb and Tarlton Stafford, all of Dallas, for appellee.

BOND, Justice.

This is an action for deceit, founded upon false representations and promises made by A. A. Hayden and J. Howard Hayden to John B. Dunlap, inducing Dunlap to purchase certain shares of stock of the Hayden Manufacturing Company, a corporation, from one L. A. Garlock, resigning a position he then had with L. H. Lacy Paving Company and accepting a position with the Hayden Manufacturing Company. The corporation's general demurrer to the plaintiff's petition was sustained, and upon refusal to amend the action against it, was dismissed.

In his petition, the plaintiff alleges that on or about March 15, 1931, he was induced to purchase from L. A. Garlock 1,500 shares of the Hayden Manufacturing Company's stock and to resign a position with the L. H. Lacy Paving Company, from which he was receiving a salary of $300 per month. Being financially unable to purchase the stock, which was well known to the defendants, and relying upon defendants' representations and promises, he borrowed $7,500 from the Mercantile Bank & Trust Company, securing it with 222½ shares of the Union Title & Trust Company's stock of the value of $22,250 and 500 shares of the Hayden Manufacturing Company's stock, which he purchased from Garlock (this $7,500 was paid to Garlock), and at the same time he executed and delivered to Garlock his note for the principal sum of $7,500, and left with him as security the remaining 1,000 shares of the stock purchased.

The representations and promises alleged as the inducing cause of the plaintiff in making the business venture are as follows: (a) That the stock of the Hayden Manufacturing Company was worth par, namely, $10 per share, with promise that if the stock should depreciate in value, the defendants would redeem the depreciation; (b) that the business of the corporation during the preceding eleven months showed a net profit of right around $5,500; (c) that not over 2 per cent. of accounts receivable would prove uncollectible, and that the corporation would pay and had paid at least 10 per cent. on the investment; (d) that L. A. Garlock, who was at the time active vice president, was causing a great deal of friction in the inner workings of the corporation, for which reasons the defendants desired plaintiff to take over Garlock's stock and replace him as vice president; (e) that plaintiff would be elected to the office of vice president and placed on the pay roll at $300 per month for a period of one year; (f) that A. A. Hayden was desirous of retiring from active participation in the business and wanted to turn the control thereof over to the plaintiff and the defendant J. Howard Hayden, jointly, and that the 1,500 shares to be purchased from Garlock, though standing in the name of the plaintiff, in reality, were to become the property of both the plaintiff and the defendant J. Howard Hayden, jointly; and (g) that J. Howard Hayden and the plaintiff would each set aside one-half of their monthly salary to form a fund out of which to pay the 1,500 Garlock shares, and eventually purchase 3,100 shares owned by A. A. Hayden.

The plaintiff further alleged that the foregoing representations and promises were material; that they were relied on by him; that they were false; that the defendants well knew them to be false; and that he was induced thereby to purchase the Garlock stock, execute the notes therefor, resign his position with the paving company, and accept employment with the Hayden Manufacturing Company, all with the view toward eventually remaining permanently with the manufacturing company and he and J. Howard Hayden acquiring ownership and control of the business.

Plaintiff further alleged that the corporation, instead of earning a net profit of 10 per cent. on the investment for the preceding eleven months, at the close of the fiscal year, March 31, 1931, its books showed a loss of $1,705.79 for the year; that instead of the accounts receivable showing a 2 per cent. loss, more than 50 per cent. were uncollectible; that the stock was "to all intents and purposes worthless"; and that the defendants failed to make the stock worth par, refused to pay him his salary and to continue him in the service of the corporation.

Plaintiff further alleged that after he borrowed the money from the bank, executed his note to Garlock, and entered upon the duties as vice president of the corporation, he was then advised by J. Howard Hayden that he could not go through with the agreement; that he could not set aside one-half of his salary to apply on the note; and that Hayden Manufacturing Company could not continue to pay the salary. As a result thereof, when the note to the bank fell due, plaintiff had to pay interest thereon amounting to $218.75; was, at maturity thereof, unable to pay the note or to extend it, and the bank sold the collateral put up as security, bid it in for $350; the bank thereafter filed suit, and on June 20, 1932, recovered judgment against him for $8,534, with interest and cost, and that, by reason of said judgment and plaintiff's inability to pay, his credit and reputation have been damaged in the sum of $50,000. Furthermore, the plaintiff alleged that he was not able to meet the Garlock note when it became due, will lose the 1,000 shares of Hayden Manufacturing Company's stock put up as security, and will have a judgment against him for the amount of that note.

The damages which plaintiff alleges that he has sustained are, as follows:

(a) $218.75 interest he paid to the Mercantile Bank & Trust Company.

(b) $8,534, together with interest, on account of the judgment sustained against him by the Mercantile Bank & Trust Company.

(c) $7,500 with interest and attorney's fees on account of the note executed and payable to L. A. Garlock.

(d) In the alternative, $15,000 as a difference between the value of the stock, as represented to him, and its actual value in the event (b) and (c) are improper items of damage.

(e) $22,500 by virtue of having lost the shares of stock in the Union Title & Trust Company.

(f) $50,000 damages to his credit and reputation, by reason of the suit filed against him by the Mercantile Bank & Trust Company.

(g) $2,100 on account of having to give up his position with L. H. Lacy Paving Company, which paid him a salary of $3,600 for the entire year, whereas he received but $1,500 from the Hayden Manufacturing Company.

The defendants, by general demurrer and special exceptions, challenged the entire theory of the plaintiff's cause of action and the right to recover the alleged damages, on the ground that the damages sought did not constitute proper elements of damage under the legal measure of damages applicable. They further answered by general denial.

The trial court held by its action on the demurrer and exceptions that the damages sought were recoverable elements of damage, but required the plaintiff to elect as to whether he shall stand on the items (b) and (c) or item (d), supra; whereupon the plaintiff elected to stand on items (b) and (c), thus eliminating from the suit item (d), and the cause proceeded to trial before a jury on the remaining issues, in answer to which the jury made the following findings:

The defendants represented: (1) That during the first eleven months of the current fiscal year, the Hayden Manufacturing Company had made a net profit of right around $5,000; (2) that the stock of the Hayden Manufacturing Company was worth $10 per share; (3) that A. A. Hayden was desirous of retiring from business of the corporation and wanted to turn the control thereof over to the plaintiff and the defendant J. Howard Hayden; (4) that the notes to be executed by Dunlap would be taken care of by Dunlap and J. Howard Hayden, each setting aside one-half of their monthly salary; (5) that the corporation had paid in the past, and would pay in the future, at least 10 per cent. on the investment; and (6) that the defendants did not represent to the plaintiff if the Hayden Manufacturing Company's stock depreciated in value, they would make up such depreciation. The jury further found that the above representations and promises were false; that they were known to be false by the defendants; that they were

willfully made; that the plaintiff relied on them as a material inducing cause for purchasing the stock of the corporation, and that the plaintiff sustained the following items of damage: (a) $5,000 on account of impairment· of his credit by reason of the suit of the Mercantile Bank & Trust Company; (b) $11,125 by reason of the value and loss of 222½ shares of the Union Title & Trust Company's stock to the bank; (c) $1,050 on account of the execution of the $7,500 note to L. A. Garlock; (d) $9,174.05 as the result of the judgment procured against him by the Mercantile Bank & Trust Company; and (e) as exemplary damages against A. A. Hayden, the sum of $500, and against J. Howard Hayden, the sum of $500.

On the findings of the jury, the court rendered judgment against the defendants A. A. Hayden and J. Howard Hayden, jointly and severally, in the sum of $26,349.05, and against them severally, as exemplary damages, the sum of $500 each, from which the appeal is prosecuted

The evidence shows that the Hayden Manufacturing Company was a corporation with a capital of $50,000; that A. A. Hayden owned $31,000 worth of the stock, L. A. Garlock owned $15,000, and J. Howard Hayden owned $4,000. J. Howard Hayden and John B. Dunlap were young men, about twenty-eight and twenty-nine years of age, respectively, had been intimate friends since childhood, and in a casual social meeting of the two, Howard imparted to Dunlap a wish or desire that circumstances were such that Dunlap could come into the organization. Dunlap at that time was working for the L. H. Lacy Paving Company, was vice president of the company, and drawing a salary of $300 per month, on the basis of yearly employment; the terminating dates of the year are not shown. Dunlap had no funds to venture into the business enterprise, which was known to Howard, but did have relatives fully able to lend to him financial assistance, of which Howard had information.

The casual meeting of the parties and the impartation of Howard's wish or desire for his boyhood friend to come into the corporation culminated into tangible proposals, the objective being, as testified to by Dunlap, quoting: "I was to go in with him (Howard Hayden) and eventually, between us, we would take over all the stock of his father and Mr. Garlock and everybody else; between the two of us, we would own the Hayden Manufacturing Company, and by hard work, we would build up a nice business. I was to be elected vice-president at a salary of $300 a month, and we would gradually take this stock over until we both owned an equal amount of stock."

Plaintiff further testified that during the course of their negotiations, A. A. Hayden being present, Howard Hayden represented to him that the stock of the Hayden Manufacturing Company was worth par—$10 per share; that the company has. in the past and would in the future earn approximately a net profit of around $5,000 per year; that the accounts receivable netted a loss of not in excess of 2 per cent.; that Garlock could not get along with the employees, for which reason they desired to get some one with whom they could work, to take Garlock's place as vice president of the company, do the same work Garlock had been doing, and draw the salary of $300 per month; that A. A. Hayden had outside interests taking up·"so much of his time, he wanted to cut loose and get out of the business as soon as possible and turn it completely over to Howard and myself"; that a working plan was drawn up, a schedule, whereby Howard Hayden and myself were to set aside a certain amount of our salary each month, put it aside in a reserve fund at the bank, and with that fund buy all the stock outstanding, first buy the Garlock stock, and gradually take over the A. A. Hayden stock.

Plaintiff further testified that Howard Hayden agreed to the plan or schedule, and on March 15, 1931, relying upon the fulfillment of the agreement, "went to the Mercantile Bank & Trust Company with 222½ shares of Union Title and Trust Company's stock, and 500 shares of the Hayden Manufacturing Company's stock * * * and borrowed $7,500 from the bank, putting that stock up as collateral, and the bank had a purchasing agreement they insisted should be signed by my father and Mr. A. A. Hayden; they (the bank) loaned the money and I took it over to the Hayden Manufacturing Company and gave it to Mr. Garlock, in Mr. Hayden's office, and executed a note for $7,500 to Mr. Garlock for the difference." The 1,000 shares of the Garlock stock was left with Garlock; 500 shares of the Hayden Manufacturing Company's stock, 222½

shares of the Union ·Title & Trust Company's stock, and the repurchasing stock agreement of A. A. Hayden and F. B. Dunlap, the father of John, were left with the Mercantile Bank & Trust Company. Plaintiff was elected vice président of the Hayden Manufacturing Company, employed by the company, and continued in its service until the early part of October, 1931. He was paid a salary of $300 per month for five months, and when the company discontinued his salary, the plaintiff testified: "I wrote my uncle and talked to various other relatives, to try to get them to help me out on that stock pledge, but without success." Plaintiff paid $218.-75 interest on the bank note, but, being financially unable to pay the principal or extend its payment, the bank sold the collateral stock shares for $350 and applied same as a credit on the note, then brought suit against 'the plaintiff, recovered judgment for the sum of $8,534, with 10 per cent. interest and cost of suit, and another suit against A. A. Hayden and F. B. Dunlap, on the repurchasing stock agreement, for $7,500. The note which plaintiff gave to Garlock is still outstanding, and no suit has been brought to foreclose his lien on the 1,000 shares of stock.

It is apparent, we think, from the averments of the petition, the evidence and fact findings of the jury, that plaintiff's cause of action is based upon the theory that J. Howard Hayden had breached an agreement for acquiring the $50,000 capital stock of the Hayden Manufacturing Company. In fact, the plaintiff testified that this agreement was the sole cause and only reason for his purchasing the Garlock stock, and, according to his testimony, the stock was to be acquired jointly by J. Howard Hayden and himself, and the details of acquiring it and of paying interest on the outlay necessary to purchase the same and to retire the principal and interest was based on future developments and contingencies. Therefore, we are of the opinion that the inducing cause for the plaintiff entering into the agreement to purchase the Garlock stock, resigning his position with the paving company and accepting employment with the Hayden Manufacturing Company, was the hope and ambition of himself and J. Howard Hayden to acquire all of the stock of the Hayden Manufacturing Company.

Assuming, without deciding, that the representations made by the defendants were false, that the stock was not worth par, that the earnings of the corporation for the year 1930 were not 10 per cent. on the investment, and that the accounts receivable·had not netted a loss in excess of 2 per cent., we think there is lacking the essential element of proximation within legal contemplation of the items of damage to the acts of the defendants. The entire damages sought and recovered, we think, are referable solely to plaintiff's financial inability to pay for the stock purchased, instead of the representations made by the defendants.

■ As applicable to the facts of this transaction is a correct rule of law: In order for plaintiff to maintain this action as one for fraud and deceit, it was necessary to allege and prove not only that the representations made by the defendants were untrue at the time made; that they were known to be untrue by the party or parties making them; that they were made with the intent and design of deceiving the plaintiff and to induce him to enter into the contract; that plaintiff relied upon such representations and was induced thereby to enter into the contract; but, also, the pleadings and proof must further show that such representations were the proximate cause of plaintiff's damage. In cases of this character, not only the fraudulent representations must be established as pleaded, but also the causal connection between such representations and the damages sustained.

■ Tested by this rule, the damages sustained are referable to plaintiff borrowing money and obligating himself upon notes and pledging collateral security in order to buy into a business, controlled and operated by the defendants, and which he was financially unable to pay. His financial inability is not traceable to any false representations that were made to him, but at most, because of an alleged breach of promises to pay his salary. The loaning of the money by the bank and the subsequent financial inability of the plaintiff to pay, and the loss sustained on account thereof, cannot be attributable to the alleged representations as to the worth, earnings, and loss of the corporation. The result would have been the same, had the representations never been made, or had they been true.

■ It is elementary that a promise to do something in the future cannot be made the basis of a charge of fraud, unless it be alleged and proved that the promisor, at

the time of making the promise, had no intention of performing it. The record makes no such contention that the defendants did not intend to perform its agreement. In the case of Chicago, T. & M. C. R. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 473, 31 Am. St. Rep. 39, the court said: "Ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal acceptation, though subsequently the promise is, without any excuse, entirely broken and nonfulfilled. This is a plain and well-established proposition, about which there can be no controversy; otherwise every breach of a contract would amount to fraud."

This being the situation presented in the instant case, we are of the opinion that no cause of action for fraud and deceit are shown, and the defendants' motion for an instructed verdict should have been sustained. The case being fully developed, we see no reason necessary to remand this cause for another trial, therefore, the judgment of the lower court is reversed and here rendered for the appellants.

Reversed and rendered.