**PORT TERMINAL RAILROAD ASSOCIA-TION, Appellant,**

v.

**ROHM & HAAS COMPANY, Appellee.**

No. 14193.

Court of Civil Appeals of Texas.

Houston.

Oct. 10, 1963.

Frank B. Davis, Alfred H. Ebert, Jr., and Wm. H. Tenison, Jr., Houston, Andrews, Kurth, Campbell & Jones, Houston, of counsel, for appellant.

Newton M. Crain, Jr., Houston, and Blades, Crain, Slator & Winters, Houston, of counsel, for appellee.

WERLEIN, Justice.

Port Terminal Railroad Association, hereinafter referred to as "PTRA," appeals from a judgment against it in the sum of $13,176.62 for the loss of a large part of a shipment of a liquid known as Methyl Methacrylate Monomer, hereinafter called "liquid" which leaked out of a tank car while being handled by it. The car in question was owned by General Transportation Company and leased to appellee. It was loaded by appellee's employees at appellee's plant at Deer Park, Texas, which is some twelve to fifteen miles from appellant's north yard in Houston, about noon on July 13, 1958, and left at appellee's plant for PTRA to pick up. PTRA picked up the car and issued a straight bill of lading which recites that the property received was in apparently good order. The bill of lading shows that the property consisted of one tank car of Methyl Methacrylate Monomer, consigned to appellee at Knoxville, Tennessee.

After said car and a number of other cars, during switching operations at various industries in the general vicinity, had been picked up and transported to appellant's north yard, the car in question was placed on appellee's Track B-7 as a part of a long "cut" or train of cars. During switching operations after 7 o'clock on the morning of July 14, 1958, appellant's engineer, Mr. Ziese, shunted said car and some other loaded cars onto Tract B-4. About four to six minutes thereafter Mr. Ziese smelled and discovered the liquid, which had a strong odor, leaking out of the tank car in question in a stream which looked like it was about the size of his hand. The crack in the car was on the side thereof just above a riveted seam and was some 26 inches in length.

■ No member of the crew that transported the car from appellee's plant to appellant's north yard testified at the trial. Appellant did not in any way account for the car during such period. Mr. Ziese did not go to work until about 7 o'clock the morning of July 14, 1958. None of his crew testified. There was no evidence that any of the liquid had leaked out of the tank car until after it had been shunted onto Track B-4, where it, or a cut of cars, of which it was a part, ran into a cut of stationary cars. The evidence showed that the car had been inspected by appellee's employees in the loading process and there was no leak or noticeable defect therein. The jury found in answer to Special Issue No. 1 that there was not a defect in the tank car in question at the time it was picked up at appellee's plant by PTRA. The only other special issue was conditional and not answered.

We have read the entire statement of facts and have concluded that the jury's answer finds support in the evidence and that it is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. This finding of the jury distinguishes this case from those cases cited by appellant in which the shipper voluntarily selected a car which was shown to be leaky or defective or improperly conditioned when loaded by the shipper.

■ When appellee showed that the property was in good condition and that there was no defect in the leased car when delivered to appellant, and that the liquid was lost in transportation when being handled by appellant in its north yard, appellee made out a prima facie case of carrier liability. As stated in the well-considered opinion of Justice Walker in Missouri Pacific R. Co. v. Elmore & Stahl, Tex.Sup. 1963, 368 S.W.2d 99:

"The carrier may then escape responsibility for the damage only by showing that it was caused solely by one or more of four excepted perils: (1) an act of God; (2) the public enemy; (3) the fault of the shipper, or (4) the inherent nature of the goods themselves. Where the loss is not due to one of these specified causes, it is immaterial whether the carrier has exercised due care or was negligent. See

Commodity Credit Corporation v. Norton, 3rd Cir., 167 F.2d 161; 13 C.J.S. Carriers § 71, p. 131."

█ The appellant did not bring itself within one of the recognized common law exceptions. The shipment in question was in interstate commerce, but, as stated by Justice Walker in said case, the provisions of the Carmack Amendment, 49 U.S.C.A. § 20(11), do not alter or modify the basic common law rule of carrier liability with which we are here concerned. See Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U.S. 319, 36 S.Ct. 555, 60 L.Ed. 1022, L.R.A.1917A, 265; Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173.

█ "The general common law rule of carrier liability has long been recognized and applied by the Federal courts." Missouri Pacific Railroad Co. v. Elmore & Stahl, supra, and authorities cited on page 101 of 368 S.W.2d of the court's opinion. The Supreme Court further pointed out that while the carrier is not an insurer with respect to damage caused solely by one of the excepted perils, its responsibility is similar to that of an insurer insofar as other risks are concerned. The so-called presumption of negligence is not a presumption at all, but is a rule of substantive law under which the carrier is liable for failure to transport safely, unless the loss or damage is due to one of the specified causes. See Chesapeake & O. Ry. Co. v. Thompson Mfg. Co., 270 U.S. 416, 46 S.Ct. 318, 70 L. Ed. 659.

The fact that the tank car in question was a leased car and loaded by appellee is of no controlling significance under the facts and circumstances of this case. It was presumably inspected by appellant before acceptance, since the Rules of the American Association of Railroads provide that all tank cars to be transferred by the carrier must be inspected by the railroad prior to being accepted for shipment. But whether it was or was not so inspected, PTRA issued its bill of lading acknowledging that such property was received by it in apparent good order. No exceptions were noted. The jury found there was no defect in the car when picked up by appellant at appellee's plant, and there is nothing in the evidence or the circumstances of the case to show that appellant knew of any defect or to charge appellee with knowledge thereof if any existed. The container in which the liquid was placed and transported was the tank car, whereas in Yeckes-Eichenbaum, Inc. v. Texas Mexican Railway Company, 5 Cir. 1959, 263 F.2d 791, the containers holding the cantaloupes were crates supplied and packed by the shipper, which the carrier accepted as being in apparent good order. Although such crates were in a closed freight car, and the only way it could be established that the cantaloupes were in good condition and in *undamaged crates* was to unload the car, inspect, and reload the car, the court held that the only way the carrier could avoid the prima facie case established by the introduction in evidence by plaintiff of the bill of lading was to prove that the shipments had suffered breakage damage before the cars were delivered to it.

In Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, the Supreme Court of the United States, in discussing the rule which requires the carrier to establish that the loss was due to some excepted peril, stated:

"The reason for the rule is apparent. He is a bailee intrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability."

See also American Cotton Oil Co. v. Davis, 129 Wash. 24, 224 P. 23 (1924), in which the carrier contended that the loss was due to improper loading by the shipper, unsupervised by the carrier, in a defective car furnished by the shipper, which was unsafe for the transportation of soya bean oil. The court said the burden of this defense was on the carrier.

Since in the instant case the carrier failed to prove that the loss sustained by appellee was due to the fault of the shipper, that is, one of the excepted causes, the judgment of the trial court is affirmed.

Affirmed.