**Edward O. STEINE, Appellant,**

v.

**HILLCREST STATE BANK OF UNIVERSITY PARK, Appellee.**

No. 16999.

Court of Civil Appeals of Texas.

Dallas.

Dec. 22, 1967.

Rehearing Denied Jan. 26, 1968.

G. H. Kelsoe, Jr., of Kelsoe & Stone, Dallas, for appellant.

**444**

Harless R. Benthul, of Estep, Waters, Benthul & McCrea, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Appeal from summary judgment. Rule 166–A, Vernon's Texas Rules of Civil Procedure.

On February 21, 1964 Edward O. Steine executed an automobile lease agreement, as lessee, in which he agreed to lease a 1964 Chrysler Imperial automobile, described in a contemporaneously executed delivery receipt, from Triple A Automobile Leasing Corporation, lessor, for a period of twenty-four months at a stipulated monthly rental fee of $160.42. Pursuant to the provisions of the lease the automobile had an agreed cost of $5,729.38 and it was therein stipulated that there would be an agreed monthly depreciation reserve of $103.13. The lease contained, inter alia, the following provision:

"4. Rate calculation and adjustment. The rate for each vehicle shall be calculated on the Base Price of said vehicle, such Base Price being the total cost of each vehicle to TRIPLE A including the purchase price, all original-purchase taxes and licenses, and all other expenses, if any, incurred in the purchase and delivery of each vehicle to Lessee. A specified part of each monthly payment shall be considered as depreciation reserve, said amount of monthly reserve to be designated on the Lease Order. Upon the return of each vehicle the total rate applicable shall be adjusted, based on the depreciated balance of said vehicle. The depreciated balance may be calculated by subtracting the accumulated monthly depreciation reserve from the Base Price. TRIPLE A shall sell the returned vehicle at the highest price obtainable. Should the sale price exceed the depreciated balance, the difference shall be refunded to Lessee. Should the depreciated balance exceed the sale price obtained by TRIPLE A, Lessee shall immediately pay TRIPLE A the additional rental so calculated. Reasonable expenses of reconditioning and sale incurred by TRIPLE A, if any, shall be deducted from the gross proceeds of sale to arrive at sale price. TRIPLE A shall sell the vehicle as soon as possible not to exceed 30 days from date returned from lease. Each vehicle shall remain in all respects subject to the terms of this lease until all proceeds whatsoever are received by TRIPLE A. Amounts of purchase and sale prices shall be subject to prior approval by Lessee. At such time that the depreciation reserve calculation shall equal the Base Price of the vehicle, additional monthly charges for such reserve shall not be assessed and the monthly rate shall be reduced accordingly. Should Lessee elect to alter the original term of the lease as provided in the Lease Order with respect to any vehicle leased hereunder, an additional flat charge of $ None shall be paid by Lessee for each month of unexpired lease term."

On March 12, 1964 Triple A Automobile Leasing Corporation executed a written assignment to Hillcrest State Bank of University Park of all its right, title and interest in and to said lease agreement.

This action was instituted by the bank against Steine in which it was alleged that pursuant to the terms of said agreement Steine made twenty-four payments thereby creating a total depreciation reserve of $2,475.12 (being $103.13 times 24). It was further alleged that after deduction of said total depreciation reserve from the agreed capitalized cost of said automobile there was a balance due of $3,254.26 under said lease agreement. The bank further alleged that pursuant to the terms of said lease, Steine was duly notified that he could purchase said automobile for said amount but that Steine refused to do so. It was alleged that upon the failure of Steine to purchase the automobile same was sold by the Bank for a total consideration of $2,225 leaving a deficiency balance of $1,029.26. Plaintiff bank sought judgment against Steine for

this amount in accordance with the terms of the agreement.

In his amended answer Steine alleged that prior to executing the lease agreement an agent and representative of Triple A Automobile Leasing Corporation represented to Steine that he was executing a twenty-four month lease with a monthly rental of $160.42; that at the end of a twenty-four month period he would be entitled to surrender the car without further liability or obligation on the lease, or he could purchase the car for its then depreciated value, whichever he, Steine, chose to do in his discretion. Steine alleged that he believed this representation, relied thereon, and but for such representation he would not have entered into the leasing agreement. He said that at the end of the twenty-four month period he chose to return the car but was advised that he would not be released, as represented to him, at the time he signed the lease. He said that this was the first time he realized and knew that the representations which had been made to him, and which induced him to sign the lease, were false and therefore the lease agreement was procured by fraud and should be declared invalid.

The bank filed its motion for summary judgment attaching thereto the lease, the delivery receipt and the assignment to the bank. Also attached was a ledger sheet showing payments made and balance due after giving credit for the sale of the automobile. Steine answered the motion again alleging that he had been induced to sign the lease by false representations on the part of an agent for the leasing corporation. In his affidavit, attached to his answer, Steine again related the representations made to him and asserted that he believed said representations, relied upon same, and would not have entered into the leasing agreement had such representations not been made. He stated that he learned the representations were false when he tried to return the car at the end of the twenty-four month period.

The trial court sustained the motion for summary judgment and rendered judgment in favor of the bank against Steine for the sum of $1,029.26.

By his two points of error, briefed together, appellant contends that the trial court erred in rendering summary judgment against him for the reason that the issue of fraud in the inducement of the execution of the written lease agreement is clearly raised by the verified answer, and supporting affidavit. Appellant argues that fraud may be a complete defense to an action for the enforcement of a contract where the fraud is shown to have induced the execution of said agreement. In support of this rule he relies upon Carson v. Taylor, 238 S.W. 261 (Tex.Civ.App., Fort Worth 1922); Free Sewing Machine Co. v. Atkin Furniture Co., 71 S.W.2d 604 (Tex.Civ. App., Austin 1934); and Southern Rock Island Plow Co. v. Williams, 80 S.W.2d 340 (Tex.Civ.App., Amarillo 1934).

It is an established rule of law that "Where an agreement has been finally reduced to writing and the instrument appears on its face to be complete and certain and to import a legal obligation, the court, in the absence of fraud, accident, or mistake, will conclusively presume that the instrument evidences the entire agreement of the parties. Consequently, under the extrinsic evidence rule, the court will exclude extrinsic evidence of any prior or contemporaneous negotiations, conversations, statements, or representations concerning the same subject matter that may be submitted for the purpose of adding to or varying the terms of the instrument." 23 Tex.Jur.2d, Evidence, § 345, p. 508.

The record does not reveal whether Steine read the lease agreement before he signed the same. If he did read its admittedly unambiguous provisions he is bound to know that if he did not purchase the car under the conditions related he would be held responsible for any deficiency. Under such contingency, absent fraud, accident or mistake, parol evidence which would seek

to vary the terms of the lease would not be admissible. If Steine did not read the lease then he will not be heard to complain now of his failure to do so unless his failure was due to coercion, fraud or mistake.

Inasmuch as appellant makes no contention that the lease agreement is ambiguous or uncertain and since he does not say that his signature thereon was obtained due to accident, coercion or mistake, the question is narrowed as to whether the record demonstrates an issue of fact concerning fraud.

Actionable fraud exists where one makes a false representation of a material fact with the intention of inducing another to rely on it to his pecuniary injury, and the other person, acting with reasonable prudence, is thereby deceived and induced to rely thereon to his damage. 25 Tex.Jur.2d, Fraud and Deceit, § 13, p. 628. The representation made must ordinarily concern a past or existing fact in order to be actionable. Representations as to future or contingent events are in general not to be deemed fraudulent though the prophesied fact does not occur. 25 Tex.Jur.2d, Fraud and Deceit, § 42, p. 679; 51 A.L.R. 46; 125 A.L.R. 879. Moreover, it has been held that the failure to discharge a promise of something to be done in the future is not fraud even though the promise is, without any excuse, subsequently broken. 25 Tex. Jur.2d, Fraud and Deceit, § 44, p. 682, and cases therein cited.

An exception to the rule thus announced is that "A promise made with a preconceived intention not to perform may amount to actionable fraud if the misrepresentation is material and is relied on by the other party to his injury." 25 Tex.Jur.2d, Fraud and Deceit, § 45, p. 684; Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1 (1923); Manziel v. Williams, 262 S.W.2d 437 (Tex.Civ.App., Texarkana 1953).

A classic illustration of the application of the rule is found in Collier v. Bankston-Hall Motors, Inc., 267 S.W.2d 898 (Tex.Civ. App., Dallas 1954), wherein Chief Justice Dixon, speaking for this court, said:

"Fraud because of misrepresentation is usually limited to misrepresentation as to past or present existing facts. Failure to perform contractual agreements to do certain things in the future does not ordinarily constitute fraud. In order to do so it is necessary to prove that at the time the promisor gave his promise he did not intend to perform it. When the promise is uttered he must have had a design then in his mind to receive and cheat the promisee by failing to carry out his agreement. Chicago, T. & N. C. Ry. v. Titterington, 84 Tex. 218, 19 S.W. 472; Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118; Stuard v. Vick, Tex.Civ.App., 9 S.W.2d 494, dismissed."

See also the opinion of this court in Hayden v. Dunlap, 84 S.W.2d 306 (Tex.Civ.App., Dallas 1935).

While it is undoubtedly the law that promises made without intention of fulfillment in order to induce others to make contracts are as culpable and as harmful as are willful misrepresentations of existing facts, it is well established that the burden is cast upon the person seeking to avoid such written agreement to both allege and prove that the representation or promise, when made, was false and made with fraudulent intent not to perform. This court in Rawdon v. Garvie, 227 S.W.2d 261 (Tex.Civ.App., Dallas 1950), had before it a similar contention and Chief Justice Bond, speaking for the court, said:

"In a purchaser's action against a vendor for breach of contract it must be alleged and shown that the contract and breach thereof were made with fraudulent intent on the part of the vendor not to perform. The burden rests upon the plaintiff or purchaser to allege and prove in such an action that the promise, when made, was fraudulent and made with the intention not to perform it. El

Jardin Immigration Co. v. Karlan, Tex. Civ.App., 245 S.W. 1043. Breach of contract does not, of itself, show fraud. Pool v. Joy, Tex.Civ.App., 61 S.W.2d 581."

In Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118 (1943), Judge Hickman of the Commission of Appeals, reviewed the applicable law concerning fraudulent statements and said that while the false promise may be established by circumstantial evidence taken in connection with the breach of the agreement, it could not be established by showing the breach of the agreement alone.

In Medina v. Sherrod, 391 S.W.2d 66 (Tex.Civ.App., San Antonio 1965), the court said:

"Failure to perform a promise to do an act in the future constitutes fraud only when it is proved that the promisor, at the time he made the promise, did not intend to perform. Mere proof of nonperformance will not support an inference of fraudulent intent. Collier v. Bankston-Hall Motors, Tex.Civ.App., 267 S.W.2d 898, no wr. hist.; Johnston v. Bracht, Tex.Civ.App., 237 S.W.2d 364, no wr. hist.; Urso v. City of Dallas, Tex.Civ. App., 221 S.W.2d 869, wr. ref.; Cassel v. West, 98 S.W.2d 437, wr. ref."

Thus we think it may be fairly said to be the law that where knowledge of falsity and intent to deceive are essential elements of the charge of fraud the person making such claim has a burden to show not only that the representation was false but also that the party making it was aware of the falsity and made the representation for the purpose of deceiving the other party. 26 Tex.Jur.2d, Fraud and Deceit, § 117, p. 87, and cases cited.

Applying the law to the factual situation presented to the trial court and to us it appears that the sole basis for the contention that the lease agreement was obtained by fraud is the statement made in the answer to the motion for summary judgment and also contained in the affidavit in support thereof, that some person in authority and connected with Triple A Automobile Leasing Corporation advised appellant that at the expiration of twenty-four months he would have the option of either turning the automobile back to the company or of purchasing it at an agreed price. This representation, taken in its most favorable aspect, is nothing more than a promise or statement concerning something that would happen in the future. It has nothing to do with an existing fact or a past fact, such as illustrated in the cases relied upon by appellant. This being true it was incumbent upon appellant to both *allege* and *prove* by summary judgment evidence that the person referred to not only made the statements relating to a future promise but that when he did so he knew that the statements were false and had no intention of complying with them, all to appellant's detriment. Appellant made no such allegations either in his pleadings or in his affidavit in opposition to the motion for summary judgment. It is not alleged nor is an effort made to prove the falsity of the statement at the time it was made nor the intent not to carry the same into effect. As the cases above cited demonstrate, the mere fact that the contract may have been breached, as contended by appellant, is not of itself evidence of false intent at the time such alleged representations were made. We feel, therefore, that appellant has wholly failed to either plead or prove by competent summary judgment evidence sufficient facts which would bring into existence issuable facts concerning fraud and thereby defeat the summary judgment.

Appellant's points are overruled and the judgment of the trial court is affirmed.