The **TRAVELERS INSURANCE COMPANY,**
Appellant,

v.

**DELTA AIR LINES, INC., Appellee.**

No. 8164.

Court of Civil Appeals of Texas,
Texarkana.

July 10, 1973.

David R. Noteware, Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

H. Dudley Chambers, Dallas, for appellee.

CORNELIUS, Justice.

This suit was filed by appellant The Travelers Insurance Company against appellee, Delta Air Lines, Inc., to recover the value of a package of jewelry delivered by Travelers to Delta in Dallas, Texas, for shipment to New York, New York. The shipment never reached its destination. Trial was to the court without a jury. The trial court, after hearing evidence, rendered judgment for Delta, denying any recovery to Travelers. Findings of Fact and Conclusions of Law were filed indicating that the basis of the trial court's holding was that Travelers had misdescribed or misstated the contents of the shipment and had failed to package the shipment properly as required by the air freight tariffs, and perpetrated a fraud on Delta, and that these acts prevented a recovery by Travelers.

The essential facts in the record are: Travelers' employee Williamson delivered the shipment of jewelry to Delta's agent for transportation to New York. The jewelry was in a brown paper envelope, approximately 8 x 10 x 1½ inches in size. The Delta agent receiving the shipment prepared the "Air Bill" for the shipment in the presence of Travelers' Williamson. The contents of the shipment were described in the air bill as "printed matter." It is disputed as to whether the Travelers' employee Williamson or the Delta agent receiving the shipment was responsible for describing the contents as "printed matter" and as to whether or not the contents were accurately represented by Williamson to the Delta employee, and the trial court found these facts in Delta's favor. The true value of the contents was declared by Travelers at $3,600.00 and the proper rate for a shipment of such value was paid by it to Delta. The shipment was received by Delta but has not been accounted for since such receipt.

The air freight tarriffs of Delta governing the shipment of freight by air were introduced in evidence. They provide, among other things, that the shipper shall prepare the air bill, or failing to do so, it shall be prepared by the air line and the shipper will be bound by the contents thereof; that the contents of the shipment must be accurately described on the air bill; and that shipments of extraordinary value must be packaged in outside containers of 5,000 cubic inches or more, with certain minimum standards of strength and durability.

Appellant's principal contention here is that, assuming that there was evidence to sustain the trial court's finding of misdescription and improper packaging, it was further necessary that the carrier show a causal connection between such acts and the failure to deliver the shipment in order to escape liability for the loss of such goods. We have concluded that this contention is correct and that there is no evidence in the record tending to show any such causal connection.

At common law the common carrier was an insurer of goods entrusted to it for shipment and could only be relieved from liability for failure to deliver by showing affirmatively that such failure to deliver was due to one of several recognized exceptions, one of which was the act or omission of the shipper. Gulf, C. & S. F. Ry. Co. v. Roberts, 85 S.W. 479 (Tex. Civ.App.1905, no writ), and cases there cited. The Carmack Amendment to the Interstate Commerce Act (49 U.S.C.A. § 20) codified the common law rule, but did not alter it in any way material to the instant case. Post Terminal Railroad Ass'n v. Rohm & Haas Company, 371 S.W.2d 403 (Tex.Civ.App. Houston 1963, no writ); Larry's Sandwiches Inc., v. Pacific Electric Railway Co., 318 F.2d 690 (9 Cir. 1963); Secretary of Agriculture of the United States v. United States of America, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173. The official air freight tariffs under which Delta received the goods delivered to it by Travelers also contained provisions essentially the same as the above mentioned

rules. Any attempt by the carrier to restrict its liability in this regard by provisions in the contract of carriage or the tariff is against public policy and void. Galveston, H. & S.A. Ry. Co. v. Ball, 80 Tex. 602, 16 S.W. 441 (1891); Vernon's Tex. Rev.Civ.Stat.Ann. art. 883; 49 U.S.C.A. § 20(11).

■ It is well settled that in order to bring itself within the stated exception to liability by reason of the act or omission of the shipper, the carrier must show affirmatively not only the act of the shipper, but also that such act was the proximate, and usually the sole proximate, cause of the loss or failure to deliver. Gulf, C. & S.F. Ry. Co. v. Culwell, 216 S.W. 457 (Tex. Civ.App. Austin, 1919 no writ); St. Louis Southwestern Ry. Co. of Texas v. Culberson, 248 S.W. 111 (Tex.Civ.App. Austin 1923, no writ); 13 C.J.S. Carriers § 115, p. 226; Hartford Fire Ins. Co. v. Galveston, H. & S.A. Ry. Co., 239 S.W. 919 (Tex. Com.App.1922, no writ); St. Louis-San Francisco Ry. Co. v. Glow Electric Co., 35 Ohio App. 291, 172 N.E. 425 (1929); Di Vita v. Payne, 149 Minn. 405, 184 N.W. 184 (1921). The tariffs in our case are in accord with this rule as they provide that the loss or damage to the goods must be "caused by" the particular excepted act for the carrier to be relieved of liability.

■ The burden of making proof of proximate cause falls upon the carrier when the shipper has made a prima facie case by proving delivery to the carrier, payment of the charges and nondelivery by the carrier. Schnell v. The Steamship Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; Texas & Pacific Ry. Co. v. Juarez, 342 S.W.2d 195 (Tex.Civ.App. El Paso 1960, Ref'd, n. r. e.); Nabors v. Colorado & S. Ry. Co., 210 S.W. 276 (Tex. Civ.App. Amarillo 1919, no writ); Post Terminal R. R. Ass'n v. Rohm & Haas Co., supra.

■ In the case at bar Delta attempted to bring itself within the exception to liability by showing that, had its agents known that the shipment contained jewelry, it would have inaugurated its "special handling procedures," which it specially designed for "high risk" shipments and as a result the shipment would not have been lost. However, it still is not known what actually happened to the shipment, and it can only be assumed that the special handling procedures would have preserved the shipment. It has been admitted by Delta in the record that the shipment was "lost or stolen," but there is no indication in the record that had the special handling procedure been inaugurated the result would have been any different. Since no one knows what happened to the shipment or when, or what caused or contributed to the happening, there is a complete absence of evidence that the acts of the shipper had any causal connection with the loss. In such a state of the record it is rank speculation to surmise that the misdescription or packaging of the shipment was the proximate cause of the failure to deliver. This is further emphasized by the fact that Delta's special handling procedures in any event would not have been inaugurated as to this shipment until after it left Dallas, and there is no evidence as to whether the parcel was lost or stolen while in Dallas or after leaving Dallas—that is, before or after the special handling procedures would have been inaugurated. In fact, there is no evidence in the record as to whether or not this particular shipment ever left Dallas.

It may seem to be a harsh rule which renders the carrier liable for an unexplained failure to deliver. But as said by the United States Supreme Court in Schnell v. The Steamship Vallescura, supra, " . . . . the law casts upon . . . (the carrier) the burden of the loss which he cannot explain, or explaining, (cannot) bring within the exceptional case in which he is relieved from liability." (parenthesis supplied). The Supreme Court in that case further explained the rule by pointing out that the discharge of

the carriers' duty to safely transport and deliver the goods is peculiarly within his control; all the facts and circumstances on which he may rely to relieve him of that duty are peculiarly within his knowledge; and those facts and circumstances are usually unknown and unavailable to the shipper. Consequently, the carrier is charged with the responsibility for a loss which in fact may not be due to his fault, merely because the law in pursuance of a wise policy casts on him the *burden of showing facts* relieving him from liability. Texas & Pacific Ry. Co. v. Juarez, supra; Schnell v. The Steamship Vallescura, supra. It would be an even harder rule which placed the responsibility on the shipper in a case of unexplained loss, since the shipper has no way of knowing or proving what happens to the shipment after it is delivered into the hands of the carrier.

The cases cited by Delta as supporting its position are distinguished on the facts. For example, in Pacific Export Company v. Pitman, 30 Tex.Civ.App. 626, 71 S.W. 312 (1902, no writ), it was shown that the shipment was stolen from a *local safe*, and that had the carrier known that the shipment contained jewelry it would have been given special care and would have been placed *in a different safe* which was not burglarized and would therefore not have been stolen. Thus, there was proof of a causal connection. We have no such proof here.

■ Delta contends that since the trial court found that the acts of Travelers constituted fraud, such fraud vitiated the entire transaction and Travelers cannot recover the value of its shipment. Fraud is one of the exceptions which will relieve the carrier in a proper case, but the general rule is that there can be no legal or actionable fraud unless the act *resulted in injury* to the person defrauded. Abernathy v. Brashear, 48 S.W.2d 393 (Tex.Civ.App. Amarillo 1932, no writ); Cole v. Butler, 36 S.W.2d 259 (Tex.Civ.App. Austin 1931, affirmed 53 S.W.2d 1010); Avery Company of Texas v. Harrison Co., 267 S.W. 254

(Tex.Com.App.1924, no writ); Hope v. Shirley, 187 S.W. 973 (Tex.Civ.App. Fort Worth 1916, no writ); 37 C.J.S. Fraud § 40, 288. It must be shown that there was a causal connection between the alleged fraudulent act or concealment and the loss. Hayden v. Dunlap, 84 S.W.2d 306 (Tex. Civ.App. Dallas 1935, no writ); Allison v. Blewett, 348 S.W.2d 182 (Tex.Civ.App. Austin 1961, ref'd, n. r. e.); Thomas v. Beckering, 391 S.W.2d 771 (Tex.Civ.App. Tyler 1965, ref'd n. r. e.). It should be remembered that in the present case there was no misstatement or misrepresentation of value or failure to pay the proper charges. The true value of $3,600.00 was declared by Travelers and the proper rate for a shipment of that value was paid. As the only acts found by the trial court here to constitute fraud were the misdescription of the shipment and the improper packaging, there is a failure to show a causal connection for the same reasons which are set out previously in the discussion of the general rules concerning exceptions to the carrier's liability.

■ Reduced to its essentials, we have here a case where the shipper has proved a prima facie case of liability by showing delivery, payment of the proper charges, and nondelivery by the carrier, and the carrier has failed to explain the loss. In such a case the law presumes fault and responsibility on the part of the carrier and the carrier must bear the loss. Galveston, H. & S.A. Ry. Co. v. Ball, 80 Tex. 602, 16 S. W. 441; Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194; Southern Pacific Co. v. D'Arcais, 27 Tex.Civ.App. 57, 64 S. W. 813 (1901, refused).

■ For the reasons stated, the judgment of the trial court must be reversed. We believe however, that the case was tried at least partially on an erroneous theory and that the facts may not have been fully developed. Therefore, in the interest of justice, judgment will not be rendered, but in accordance with the prin-

ciples set out in Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178 (1937); and Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951), the cause will be remanded to the trial court for a new trial.

Reversed and remanded.